UNITED STATES of America ex rel.
Cornelius LUCAS

v.

Paul J. REGAN, Chairman, New York
State Division of Parole.

No. 73–C–593.

United States District Court,
E. D. New York.

Nov. 9, 1973.

Robert A. Kasanof, The Legal Aid Society by Lewis B. Oliver, Jr., New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen., State of New York by Arlene R. Silverman, Asst. Atty. Gen., New York City, for respondent.

## MEMORANDUM AND ORDER

COSTANTINO, District Judge.

On May 1, 1973 Lucas submitted a petition for a writ of habeas corpus to this court asserting that the state conviction for which he is presently on parole was unlawful and unconstitutional. He was convicted on May 25, 1965 in Supreme Court, Kings County, of robbery in the

first degree, grand larceny in the first degree, and assault in the second degree after a jury trial. He had been tried with Edward Polhill who was also convicted. The principal witnesses against them were the third robber, Norman Adderly and Mrs. Almeta Gardner, the complainant. Lucas was sentenced on September 7, 1965 to concurrent sentences of ten to twenty years, five to ten years and two to two and one-half years. Coram nobis relief was denied by an order of the Supreme Court, Kings County entered October 15, 1968. The Appellate Division, Second Department, affirmed the consolidated direct appeal and coram nobis appeal on January 19, 1970 (no opinion), 33 A.D.2d 994, 308 N.Y.S.2d 299 (1970). The Court of Appeals affirmed, 28 N.Y.2d 761, 321 N.Y.S.2d 371, 269 N.E.2d 914 (1971) (Breitel, J., dissenting) and denied a motion for reargument, 29 N.Y.2d 549, 324 N.Y.S.2d 95, 272 N.E.2d 583 (1971). Certiorari was denied in the United States Supreme Court, 404 U.S. 994, 92 S.Ct. 542, 30 L. Ed.2d 547 (1971) (Douglas, J., dissenting). After a hearing held on June 5, 1973 the court reserved decision.

The specific grounds for seeking the writ are as follows:

1. The trial judge denied a continuance sought by the defense (A) to enable it to secure attendance of a witness the defense considered crucial and (B) to secure compliance with a subpoena for psychiatric records of an important witness against Lucas, thereby depriving petitioner of due process.

2. A station house "show up" of petitioner, conducted after the complainant had previously identified another person as a perpetrator from a full line-up, deprived petitioner of due process.

3. The trial court and the prosecutor both failed to correct false testimony given by the accomplice as to the terms of his agreement to turn state's evidence, thereby depriving petitioner of due process.

I. *The Request for a Continuance.*

A. *To secure attendance of a material witness.*

On the last day of the trial, May 25, 1965, defendant requested a continuance so that a man first identified by the complainant as the third of the three robbers, Ulysses Bryant, could be located and questioned as a witness. Bryant was identified as one of the robbers by Mrs. Almeta Gardner three days after she was robbed. Mrs. Gardner had been brought to a police station for a line-up in which she identified three men, Adderly, Polhill, and Bryant, as the perpetrators. One hour later for reasons not disclosed in the record petitioner was arrested and was one of several men brought before her alone in a room. She identified Lucas at that time as the third and said she had been mistaken about Bryant. Bryant, who was Adderly's cousin, was arrested with Adderly and Polhill. He was clearly a material and relevant witness for petitioner to question for the jury to see and hear so that it could evaluate Mrs. Gardner's identifications.

Defense counsel first learned about Bryant on May 21, 1965, the second day of the trial, during the cross-examination of Mrs. Gardner. They immediately sent out an investigator to locate Bryant, but by May 25 they had not been able to find him and so moved for a continuance. Judge Harry Gittleson, the trial judge, in discussing the reasons for his denial of the motion for a continuance, pointed out that the defense had had four days to locate Bryant. In addition it was shown that Lucas had known Bryant for at least a year prior to the trial and so might have apprised his counsel of Bryant's importance to his defense.

The granting of a continuance during a trial is discretionary with the trial judge. Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), reh. denied, 377 U.S. 925, 84 S. Ct. 1218, 12 L.Ed.2d 217 (1964). Only

if the refusal is arbitrary is there a violation of due process. Nilva v. United States, 352 U.S. 385, 77 S.Ct. 431, 1 L. Ed.2d 415 (1957), reh. denied, 353 U.S. 931, 77 S.Ct. 716, 1 L.Ed.2d 724 (1957); United States ex rel. Hyde v. McMann, 263 F.2d 940 (2d Cir. 1959); cert. denied, 360 U.S. 937, 79 S.Ct. 1462, 3 L. Ed.2d 1549 (1959); United States ex rel. Hussey v. LaVallee, 302 F.Supp. 305, 309 (E.D.N.Y.1969). Arbitrariness must be determined by viewing all the circumstances surrounding the trial judge's decision. Here Judge Gittleson was presiding over a jury trial which had been under way for five days. When considering the length of the trial, the fact that counsel had had four days to locate the witness, and the fact that petitioner himself knew of Bryant and his importance, it cannot be said that Judge Gittleson's denial of the continuance was arbitrary. Petitioner's first ground is therefore without foundation.

B. *To Secure Psychiatric Records of an Important Witness.*

On the first day of the trial defense counsel learned of Norman Adderly's psychiatric history and subpoenaed his psychiatric records. The records had not been produced by the last day of the trial, May 25, 1965, and defense counsel requested a continuance until they could be produced. Judge Gittleson noted that defense counsel were merely speculating that the psychiatric records would be of value to the defendants and, more importantly, that they had had four days to secure compliance with the subpoena.

█ The *coram nobis* hearing, held in October, 1968, fully explored Adderly's competency as a witness and this court presumes to be correct the finding that no error in this regard was made, pursuant to 28 U.S.C. § 2254(d) (1971).

It should be noted that the defense had every opportunity to cross-examine Adderly as to his psychiatric records and mental condition. In addition, the records themselves were a year old at the time of the trial and would have

been of limited utility. Defense counsel could have called expert witnesses to impeach Adderly's testimony had the defense desired to place his mental condition in issue, but they did not.

█ Accordingly, petitioner's second ground is without foundation.

II. *The Station House Show Up.*

Mrs. Gardner was asked to go to the station house three days after the robbery and view a line-up to ascertain whether she could identify her assailants. She immediately identified Adderly and Polhill and while she did identify Bryant as the third, she was not as certain as she had been about the first two. While she was being questioned by the Assistant District Attorney a series of men were brought before her individually and it was from this group that Mrs. Gardner picked out Lucas. Petitioner now contends the show up was improper and violated his due process rights in that the previous identification was more reliable and therefore petitioner should have been shown to her, if at all, in an equally neutral manner.

As the Supreme Court said in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972):

[A]s Stovall [Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)] makes clear, the admission of evidence of a showup without more does not violate due process.

. . .

. . . . . .

[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 198, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

Mrs. Gardner testified that she had not been sure of the first identification of the third robber and that when she was shown petitioner she recognized him as the correct man. There is no evidence of any suggestion to Mrs. Gardner that petitioner was the third robber. The identification took place only three days after the robbery and Mrs. Gardner testified that she had gotten a good look at all three robbers during the crime itself.

██ No hearing was required to determine the accuracy of the identification, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), because *Wade* has no retroactive requirement. Viewing all the circumstances, the identification of petitioner was not so suggestive so as to give rise to a "substantial likelihood of irreparable misidentification." United States ex rel. Phipps v. Follette, 428 F.2d 912, 915 (2d Cir. 1970). Accordingly, petitioner's third ground is denied.

### III. *The Testimony about the Plea Bargain.*

During the pretrial proceedings in this case Adderly was offered the bargain of a reduced charge—attempted robbery in the third degree—in return for his testimony as a prosecution witness. Petitioner asserts that Judge Gittleson told Adderly that he was to testify "against these defendants" and that therefore when Adderly testified before the jury that he was told only to "tell the truth" and this was not corrected by either the judge or the prosecutor, petitioner's rights were violated. He alleges that the jury may have gotten a distorted view of the bargain and that Adderly's motives for implicating petitioner may not have been fully understood by the jury. The record, however, indicates that the bargain was fully examined before the jury and the jury was aware of the inducements Adderly had been offered for his testimony. He said, "If I get on the stand and speak the truth, exactly what happened that night, they would allow me to plead guilty to attempt[ed] unarmed robbery in the third degree."

██ The test for determining whether there has been an abuse of discretion is whether "the jury was otherwise in possession of sufficient information concerning formative events to make a 'discriminating appraisal' of a witness' motives and bias. See Gordon v. United States, [344 U.S. 414, 417, 73 S.Ct. 369, 97 L.Ed. 447 (1953)]." United States v. Campbell, 426 F.2d 547, 550 (2d Cir. 1970). The court finds that Adderly's motives for testifying were before the jury and that there was no undue bias in his asserting that he had been told to tell the truth.

All four of petitioner's grounds are baseless and accordingly, the petition for a writ of habeas corpus is denied.