Earl Edward GANDY,
Petitioner-Appellant,

v.

STATE OF ALABAMA,
Respondent-Appellee.

No. 77-1265.

United States Court of Appeals,
Fifth Circuit.

March 23, 1978.

Robert R. Bryan, Birmingham, Ala. (Court-appointed), for petitioner-appellant.

William J. Baxley, Atty. Gen., Jane LeCroy, Asst. Atty. Gen., Montgomery, Ala., for respondent-appellee.

Before MORGAN, HILL and FAY, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This appeal from the denial of federal habeas corpus relief presents the issue

whether the refusal by the state trial court either to grant a motion for a reasonable continuance in order that the defendant have the assistance at trial of counsel whom he had chosen and retained or in some other manner assure the continued attendance of the retained counsel, who announced an intention to abandon the defendant in midtrial and later did so, was a deprivation of due process violative of the Fourteenth Amendment. U.S.Const. Amend. XIV. Given the specific and unique facts of this case, we hold that Petitioner-Appellant was denied due process of law and reverse.

1. Under a second indictment, Petitioner was acquitted of a related charge of the carnal knowledge of the same alleged victim during the period when she was twelve years of age and younger. We need not detail the alleged facts of the crime here. On direct appeal, before summarizing the facts, the Court of Criminal Appeals of Alabama stated:

It will serve no useful purpose to memorialize the ugly and sordid details of the two-volume record in this case in the permanent archives of this court. Suffice it to say that the facts are revolting.

It would not be inaccurate to say that appellant was possessed of an insatiable sexual appetite. Females from age ten to age fifty were his targets; deflowerment, defilement, debasement, and debauchery were his goals and accomplishments (sic).

*Gandy v. State*, 49 Ala.App. 123, 125, 269 So.2d 141, 142–43 (1972), *certiorari stricken*, 280 So.2d 107 (1973).

The critical facts for *this* habeas corpus proceeding occurred *in* the courtroom. In a case raising a similar due process contention the Supreme Court of Alabama reached a result similar to the one we reach today and aptly noted:

The right of an accused to be represented by counsel of his own choice where he himself has obtained such counsel is a basic tenet of our Constitution. Its illumination falls upon all alike, and this beneficent light should not be dimmed by the character of the person upon whom it falls.

*Davis v. State*, 292 Ala. 210, 215, 291 So.2d 346, 350 (1974).

When, as here, we review a state court conviction, we are ever mindful of our responsibility which is at once constitutionally prescribed and circumscribed. Mr. Justice Black, recognizing the need for affording respect to state court proceedings, suggested that the right to counsel sometimes overreaches otherwise important concerns of federalism:

## I.

What began as an ordinary state criminal case soon developed into a constitutionally extraordinary proceeding requiring our review and reversal of the district court's denial of federal habeas corpus relief. On February 6, 1970, the grand jury of Jefferson County, Birmingham, Alabama returned an indictment against Petitioner-Appellant, Earl Edward Gandy ("Petitioner"), charging him with the carnal knowledge of a girl over the age of twelve and under the age of sixteen.[1] Petitioner was served with a copy of the indictment on

Consistently with the preservation of constitutional balance between State and Federal sovereignty, this Court must respect and is reluctant to interfere with the States' determination of local social policy. But where denial of the constitutional right to assistance of counsel is asserted, its peculiar sacredness demands that we scrupulously review the record.

*Avery v. Alabama*, 308 U.S. 444, 447, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1939) (footnotes omitted).

Mr. Justice Frankfurter cautioned against federal court encroachment of state criminal proceedings in *Rochin v. California*, 342 U.S. 165, 168, 72 S.Ct. 205, 207, 96 L.Ed. 183 (1952):

[I]n reviewing a State criminal conviction under a claim of right guaranteed by the Due Process Clause of the Fourteenth Amendment, from which is derived the most far-reaching and most frequent federal basis of challenging State criminal justice, 'we must be deeply mindful of the responsibilities of the State for the enforcement of criminal laws, and exercise with due humility our merely negative function in subjecting convictions from state courts to the very narrow scrutiny which the Due Process Clause of the Fourteenth Amendment authorizes.' *Malinski v. New York*, 324 U.S. 401, 412, 418, 65 S.Ct. 781, 89 L.Ed. 1029. Due process of law, 'itself a historical product,' *Jackman v. Rosenbaum Co.*, 260 U.S. 22, 31, 43 S.Ct. 9, 67 L.Ed. 107, is not to be turned into a destructive dogma against the States in the administration of their systems of criminal justice.

This Court has recognized that "we may review a state court's refusal to grant a continuance only to determine whether that failure amounted to a denial of due process." *White v. Estelle*, 566 F.2d 500, 503 n.3 (5th Cir. 1978). Thus, our focus is constitutionally narrowed.

May 21, 1970. He was arraigned in the presence of his retained counsel, Ralph E. Coleman, and entered a plea of not guilty on December 2, 1970.[2] The docket was called in the Jefferson County Circuit Court on February 22, 1971, and when the case against Petitioner was announced a Mr. Rainey told the court that Coleman, Petitioner's retained attorney, would be present on the next day, but that he did not have the authority to announce ready for the defense. At this point a strange sequence of events occurred. The case came on for trial the next day, February 23, 1971. The defense never formally announced ready; and Coleman advised the court that on the following day he would be engaged in the trial of a civil action in the Circuit Court of Talledega County and a jury had already been struck for the case the previous day with out-of-town witnesses having been subpoenaed. There is no indication in the record that Coleman made any effort to postpone or substitute other counsel in the civil case. Instead, he announced his intention to attend the other trial and moved for a continuance until the civil trial in Talledega County was complete. In the face of this ultimatum, the trial court did not even suggest that Coleman's abandonment would not be tolerated. Rather, he presented an attitude of insensitivity for Petitioner's rights by seemingly countenancing the proposed desertion by an officer of his court. After brief arguments, the motion for a continuance was denied. When it became obvious that Petitioner would be compelled to proceed to trial immediately, arrangements were made for J. Sherrill Hancock, Coleman's law partner, to assist in the case. Both Coleman and Hancock strenuously objected to the denial of the motion for continuance. It is uncontroverted in the record

that Coleman was familiar with the case and was prepared for trial.[3] It is also uncontroverted in the record that Hancock had no relation to the case prior to February 23, 1971, and was completely unfamiliar and unprepared. Nevertheless, the trial began. Coleman was present for the remainder of the day and, along with Hancock, conducted the defense. When the trial reconvened on February 24, 1971, Coleman was not present and Hancock conducted the defense. Petitioner was found guilty and punishment was fixed at ten years imprisonment. On direct appeal, Petitioner's conviction was affirmed. *Gandy v. State, supra.* After exhausting further remedies available in the state courts, Petitioner filed a petition for habeas corpus relief in the United States District Court for the Northern District of Alabama which was denied because, in the district court's opinion, the issue raised had been adequately treated by the Court of Criminal Appeals of Alabama and did not raise a federal constitutional question. This appeal followed.

## II.

Our initial premise, that the right to counsel is a vital component in the scheme of due process and the keystone of our adversary system of criminal justice, can be traced to the seminal case of *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). In that case the Supreme Court held that the right of an accused person to have the aid of counsel for his defense, at least in a capital case, was one of the fundamental rights guaranteed by the due process clause of the Fourteenth Amendment. The Court stated:

> It never has been doubted by this court, or any other so far as we know, that notice and hearing are preliminary

**2.** The case was passed several times. One delay of two days, from November 30, 1970 to December 2, 1970, resulted from a change of defense attorneys. A second defense delay was granted, without objection, on January 15, 1971. We provide a detailed chronicle of the factual sequence here in order first, to decide this case and second, to define this precedent. "What due process requires in one situation may not be required in another, and this [is], of

course, because the least change of circumstances may provide or eliminate fundamental fairness." *Crooker v. California,* 357 U.S. 433, 441 n.6, 78 S.Ct. 1287, 1292 n.6, 2 L.Ed.2d 1448 (1958).

**3.** Coleman later represented Petitioner in the related carnal knowledge trial at which Petitioner was acquitted. *See* note 1 *supra.*

steps essential to the passing of an enforceable judgment, and that they, together with a legally competent tribunal having jurisdiction of the case, constitute basic elements of the constitutional requirement of due process of law. . .

What, then, does a hearing include? Historically and in practice, in our own country at least, it has always included the right to the aid of counsel when desired and provided by the party asserting the right. . . . If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.

*Powell v. Alabama, supra* at 68–69, 53 S.Ct. at 64.

Even prior to the extensions of this protection in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), judicial refinement of the right to counsel concept suggested that the mere representation by counsel, *per se*, would not always satisfy minimal due process standards.[4] Rather, it appeared that the right to counsel theme had variations other than the mere *pro forma* appointment of an attorney. For example, in *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the Supreme Court suggested one such variation on the theme by holding that the representation of codefendants by otherwise competent counsel violated Sixth Amendment rights when it appeared that the interests of the codefendants might be in conflict. *See also Chambers v. Maroney*, 399 U.S. 42, 53, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Thus, the quality of legal assistance has become a factor in determining whether a trial comports with due process. *See MacKenna v. Ellis*, 280 F.2d 592 (5th Cir. 1960), *modified*, 289 F.2d 928, *cert. denied*, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961).

This Court in *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir.) (en banc), *cert. denied*, 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675 (1975), held that two independent constitutional provisions, each requiring a distinct analysis, provide a federal court with the authority to inquire into the quality or effectiveness of representation of privately retained counsel in a state criminal case. Under the first analysis, the Fourteenth Amendment itself is violated whenever a retained defense attorney is so blatantly ineffective that a trial is rendered fundamentally unfair because the state's criminal justice system has failed to afford the defendant fundamental fairness; and the consequent fine or imprisonment is unconstitutional. Under the second analysis, when retained counsel's performance is less than reasonably effective yet not so grossly defective to render the proceeding fundamentally unfair, the Sixth Amendment right to counsel incorporated in Fourteenth Amendment due process[5] is violated if it is "shown that some responsible state official connected with the criminal proceeding . . . could have remedied the conduct [and] failed in his duty to accord justice to the accused." *Id.* at 1337. *See also Cantrell v. Alabama*, 546 F.2d 652 (5th Cir. 1977); *United States ex rel. Reis v. Wainwright*, 525 F.2d 1269 (5th Cir. 1976); *Alavarez v. Wainwright*, 522 F.2d 100 (5th Cir. 1975); *Loftis v. Estelle*, 515 F.2d 872 (5th Cir. 1975).

A concomitant due process doctrine, a variation on the right to counsel theme, has evolved which basically guarantees a defendant both a fair opportunity to be represented by counsel of his own choice and a sufficient time within which to prepare a defense.

4. *See generally United States ex rel. Carey v. Rundle*, 409 F.2d 1210, 1212–15 (3d Cir. 1969), *cert. denied*, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970).

5. *Gideon v. Wainwright, supra.*

In *Chandler v. Fretag*, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954), the defendant was charged with two separate offenses scheduled to be tried on the same day. On the day of the trial, he appeared without counsel, intending to plead guilty, and was told for the first time that he was to be tried under the state's habitual criminal statute which carried serious penalties. He promptly requested a continuance to enable him to obtain counsel. The request was denied and the case immediately proceeded to trial which ended in his conviction. The Supreme Court reversed the conviction stating:

> Petitioner did not ask the trial judge to furnish him counsel; rather, he asked for a continuance so that he could obtain his own. The distinction is well established in this Court's decisions. Regardless of whether petitioner would have been entitled to the appointment of counsel, his right to be heard through his own counsel was unqualified. . . . A necessary corollary is that a defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth.

*Id.* at 9–10, 75 S.Ct. at 4. (citations and footnote omitted).

*See also Crooker v. California, supra,* 357 U.S. at 439, 77 S.Ct. 1300; *White v. Ragen,* 324 U.S. 761, 764, 65 S.Ct. 978, 89 L.Ed. 1348 (1944); *Avery v. Alabama, supra,* 308 U.S. at 446, 60 S.Ct. 321; *Powell v. Alabama, supra,* 287 U.S. at 71, 53 S.Ct. 55.

However, the Supreme Court has made it clear that not every denial of a request for a continuance is a denial of due process. In *Ungar v. Sarafite,* 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), the defendant's second retained attorney requested an additional week in order to gain a better familiarity with the case, after two brief continuances already had been granted to accommodate a change of counsel. After that request was denied, counsel was permitted to withdraw, and the defendant, an attorney, moved for a continuance in order to obtain expert testimony and otherwise prepare his own case. The defendant's request was denied and he was found guilty. The Supreme Court found no denial of due process in either of the two denials:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.
>
> .    .    .    .    .
>
> These matters are, of course, arguable, and other judges in other courts might well grant a continuance in these circumstances. But the fact that something is arguable does not make it unconstitutional. Given the deference necessarily due a state trial judge in regard to the denial or granting of continuances, we cannot say these denials denied Ungar of due process of law.

*Id.* at 589–91, 84 S.Ct. at 849 (citations omitted).

■ Initially, the determination of when to allow a continuance is committed to the deliberate discretion of the trial judge. The trial judge must steer clear of the Scylla and Charbdis of extremes.[6] At one extreme, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to counsel an empty formality." At the opposite extreme, "it is not every denial of a request

---

**6.** *United States ex rel. Carey v. Rundle, supra* 409 F.2d at 1215. *Cf. Hunter v. Fairfax's Devisee,* 3 Dallas 305, 1 L.Ed. 613 (1796).

for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." While discretion is the rule of general application grounded in precedent, tradition and common sense, discretion can be abused. Viewing all the circumstances surrounding the trial court's decision, in the unusual case the denial of a continuance may be so arbitrary and so fundamentally unfair as to do violence to the Constitutional principle of due process.[7]

> Due process demands that the defendant be afforded a fair opportunity to obtain the assistance of counsel of his choice to prepare and conduct his defense. The constitutional mandate is satisfied so long as the accused is afforded a fair or reasonable opportunity to obtain particular counsel, and so long as there is no arbitrary action prohibiting the effective use of such counsel.
>
> *United States ex rel. Carey v. Rundle, supra* 409 F.2d at 1215.

*See also United States v. Inman,* 483 F.2d 738, 739–40 (4th Cir. 1973), *cert. denied,* 416 U.S. 988, 94 S.Ct. 2394, 40 L.Ed.2d 766 (1974); *United States v. Jones,* 369 F.2d 217, 219 (7th Cir.), *cert. denied,* 386 U.S. 944, 87 S.Ct. 976, 17 L.Ed.2d 875 (1966); *Thacker v. Slayton,* 375 F.Supp. 1332, 1335 (E.D.Va.1974).

Thus, the right to counsel theme of the due process clause has at least four important variations: the right to have counsel, the right to a minimal quality of counsel, the right to a reasonable opportunity to select and be represented by chosen counsel,

and the right to a preparation period sufficient to assure at least a minimal quality of counsel.

### III.

From the foregoing discussion, the conclusion follows that not all the variations of the right to counsel theme are absolute values. Indeed, it is a settled principle that the right to counsel of one's choice is not absolute as is the right to the assistance of counsel. *United States v. Gray,* 565 F.2d 881, 887 (5th Cir. 1978); *United States v. Harrelson,* 477 F.2d 383 (5th Cir.), *cert. denied,* 414 U.S. 847, 94 S.Ct. 133, 38 L.Ed.2d 95 (1973); *United States v. Sexton,* 473 F.2d 512 (5th Cir. 1973); *United States v. Hollis,* 450 F.2d 1207 (5th Cir. 1971). The right to choose counsel may not be subverted to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.[8] It is a right and a proper tool of the defendant; it cannot be used merely as a manipulative monkey wrench. A defendant cannot assume that the right to choose counsel affords "the right to obtain a delay at his whim and caprice, or to obtain a reversal because he was unable to frustrate justice." *United States v. Grow,* 394 F.2d 182, 210 (4th Cir.), *cert. denied,* 393 U.S. 840, 89 S.Ct. 118, 21 L.Ed.2d 111 (1968). Rather, the proper exercise of the trial court's discretion requires a delicate balance between the defendant's due process right to adequate representation by counsel of his choice and the general interest in the prompt and efficient administration of justice.[9] *See United States v.*

---

**7.** *See Shirley v. North Carolina,* 528 F.2d 819, 822 (4th Cir. 1975); *United States ex rel. Lucas v. Regan,* 365 F.Supp. 1290, 1292–93 (E.D.N.Y. 1973), *aff'd,* 503 F.2d 1 (2d Cir. 1974), *cert. denied,* 420 U.S. 939, 95 S.Ct. 1149, 43 L.Ed.2d 415 (1975).

**8.** *United States v. Sexton, supra; United States v. Terry,* 449 F.2d 727 (5th Cir. 1971); *United States ex rel. Baskerville v. Deegan,* 428 F.2d 714 (2d Cir.), *cert. denied,* 400 U.S. 928, 91 S.Ct. 193, 27 L.Ed.2d 188 (1970); *Bowman v. United States,* 409 F.2d 225, 226–27 (5th Cir. 1969), *cert. denied,* 398 U.S. 967, 91 S.Ct. 2183, 26 L.Ed.2d 552 (1970), *citing United States v. Llanes,* 374 F.2d 712, 717 (2d Cir.), *cert. denied,*

388 U.S. 917, 87 S.Ct. 2132, 18 L.Ed.2d 1358 (1967); *United States v. Burkeen,* 355 F.2d 241 (6th Cir.) *cert. denied sub nom., Matlock v. United States,* 384 U.S. 957, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1966); *Cleveland v. United States,* 116 U.S.App.D.C. 188, 322 F.2d 401, *cert. denied,* 375 U.S. 884, 84 S.Ct. 157, 11 L.Ed.2d 114 (1963); *Gerald v. United States,* 405 F.Supp. 404 (E.D.N.C.1975).

**9.** Desirable as it is that a defendant obtain private counsel of his own choice, that goal must be weighed and balanced against an equally desirable public need for the efficient and effective administration of criminal justice. The calendar control of modern crimi-

*Uptain,* 531 F.2d 1281, 1291 (5th Cir. 1976). While what is a "fair or reasonable opportunity" depends upon all the surrounding circumstances, some factors to be considered include: (1) the length of the requested delay; (2) whether the lead counsel has an associate who is adequately prepared to try the case; (3) whether other continuances have been requested and granted; (4) the balanced convenience or inconvenience to litigants, witnesses, opposing counsel and the court; (5) whether the requested delay is for a legitimate reason, or whether it is dilatory and contrived; (6) whether there are other unique factors present. *See generally Giacalone v. Lucas,* 445 F.2d 1238 (6th Cir. 1971), *cert. denied,* 405 U.S. 922, 92 S.Ct. 960, 30 L.Ed.2d 793 (1972).[10] Here, the listed factors, all known by the trial court when the continuance motion was considered, point toward the granting of Petitioner's motion: (1) the delay requested was only for so long as the Talledega Coun-

ty civil case lasted; (2) the associate, Hancock, was completely unprepared and unfamiliar with the case; (3) other continuances had been requested by and granted to both sides; (4) losing the services of Petitioner's retained counsel outweighed any inconvenience here; (5) the requested delay does not appear to have been a defense strategem or dilatory tactic, and whether or not the retained counsel's election was proper his alternatives were both important; (6) the trial court was fully aware of the planned abandonment and all the other factors when he denied the request. However, having identified some of the more critical factors to be considered is the beginning, not the end, of our analysis. We must now determine whether the trial court's evaluation of these identified factors and reconciliation of the competing values was so arbitrary as to violate principles of due process. In making this determination we are guided by two controlling precedents which bring

nal court dockets, especially in metropolitan communities, is a sophisticated operation constantly buffeted by conflicting forces. The accused's rights—such as those relating to a speedy trial, to an adequate opportunity to prepare the defense, and to confront witnesses—are constantly in potential or real conflict with the prosecution's legitimate demands for some stability in the scheduling of cases. The availability of prosecution witnesses is often critically dependent on the predictability of the trial list. That delays and postponement only increase the reluctance of witnesses to appear in court, especially in criminal matters, is a phenomenon which scarcely needs elucidation.

Moreover, it is not only the prosecution which may suffer from unscheduled changes in the calendar. To permit a continuance to accommodate one defendant may in itself prejudice the rights of another defendant whose trial is delayed because of the continuance. Played to an extreme conclusion, this indiscriminate game of judicial musical chairs could collapse any semblance of sound administration, and work to the ultimate prejudice of many defendants awaiting trial in criminal courts.[6]

[6] For example, defendant A is listed in courtroom 1 for trial on day X. Defendant B is listed for trial in courtroom 1 for trial on day X + 7. A's successful application for postponement leaves courtroom 1 empty on day X. His trial is held instead on day X + 7, and B is denied a speedy trial. Multiply these factors by the number of post-

ponements and it becomes obvious that an overzealous solicitation for defendant A could seriously impair the rights of defendant B.

This is not to say that there should be an arbitrary and inelastic calendaring of cases without due regard, for example, to the existence of conflicting demands for the service of a particular counsel by different courts or by the schedules within a multi-judge court. In judicial administration, too, there should be no absolutes. It is the trial judge who must balance the conflicting demands of court administration with the rights of the accused, conscious, however, that when he considers the rights of those accused of crime, he must consider not only those involved in the case immediately before him but also those of other defendants awaiting trial whose rights may be affected by the consequences of trial delay.

*United States ex rel. Carey v. Rundle, supra* 409 F.2d 1214–15.

10. Often this Court has evaluated claims of inadequate preparation time based on a denial of a request for a continuance. While a claim of inadequate preparation time is distinguished from a claim that the denial of a continuance arbitrarily infringed upon the right to choose and utilize retained counsel, should the later type claim be rejected the former type claim may still be viable, depending on the surrounding circumstances. That determination focuses on related but different factors. *See generally United States v. Uptain, supra.*

us to the conclusion that Petitioner was denied due process.[11]

The first case which we examine, *Argo v. Wiman,* 209 F.Supp. 299 (M.D.Ala.), *aff'd,* 308 F.2d 674 (5th Cir.), *cert. denied,* 371 U.S. 933, 83 S.Ct. 306, 9 L.Ed.2d 270 (1962), concerned federal habeas corpus proceedings filed by Argo challenging his two felony convictions in Jefferson County, Alabama. The facts were remarkably similar and constitutionally indistinguishable from the facts we review on this appeal. Argo's case was called for trial on March 16th, at which time the case was continued until the following morning at 9:00 a. m. Argo had retained an attorney to represent him in the case and the attorney had been present when the case was continued. On the morning of March 17th, the case was called for trial, but Argo's retained counsel was not present. The trial judge recessed the case for fifty minutes. During this interval a diligent effort to locate the retained counsel proved unsuccessful. Following the recess, the trial judge appointed a competent attorney to represent Argo, over defense protests. Argo's personal request for a continuance until his retained counsel could be located and present was denied. The appointed counsel was given access to the prosecutor's file and was allowed to confer with Argo briefly before the trial commenced. During this conference Argo asked the court appointed attorney to move again that the case be continued until his retained counsel could be located and present. The appointed counsel refused to make such a motion, although he did promise to prolong the selection of the jury in order that the retained attorney could be present for most of the trial. The trial proceeded until the noon recess without the retained counsel. By that time, most of the state's case in chief had been presented. During the noon recess the retained counsel arrived and conferred with Argo, the court appointed counsel and some witnesses. Both the retained counsel and the court appointed counsel participated in the re-

mainder of the trial. The record also disclosed that the retained counsel had represented one of Argo's codefendants and, unlike the court appointed counsel, was thoroughly familiar with the case. The district court held:

> On the evidence in this case, this Court concludes that the denial of Argo's motion for a short continuance or delay so that his retained counsel . . . could be located and present, and the appointment of counsel who was not familiar with Argo's case, and the putting of Argo to trial with appointed counsel in the absence of his retained counsel, was arbitrary action on the part of the trial judge to an extent that Argo on March 17, 1960, in the Circuit Court of Jefferson County, Alabama, was denied his due process rights in a constitutional sense.

*Argo v. Wiman,* 209 F.Supp. at 302. This Court affirmed, specifically agreeing with the district court's findings of fact and conclusions of law. *Wiman v. Argo,* 308 F.2d at 676. If any difference between the *Argo v. Wiman* facts and those we review is significant, the situation here is more serious. Here the trial court was fully aware of the retained attorney's intention to abandon his client yet, he took no action to prevent it, though he had the opportunity.

The second precedent which we find to be outcome determinative of this appeal is *Gomez v. Heard,* 218 F.Supp. 228 (S.D.Tex. 1962), *aff'd,* 321 F.2d 88 (5th Cir. 1963). Gomez was indicted in the 118th District Court of Howard County, Texas, and consulted with a number of attorneys in the area. He eventually retained an attorney from Houston, Texas to represent him. When the case was called for trial, Gomez appeared without counsel and filed a motion for continuance and supporting affidavit of his retained attorney. The motion stated that the retained attorney was then engaged in a trial in New York and requested that the Texas case be continued until such reasonable time as the retained

11. This panel is bound by a prior panel's decision in the absence of intervening *en banc* reconsideration or Supreme Court precedent.

*Malone v. Alabama,* 514 F.2d 77, 80 (5th Cir. 1975).

attorney could appear. Over defense objection, the Texas court appointed an attorney to defend Gomez, although he was not an indigent, and the trial ended in his conviction. The district court, on the petition for federal habeas corpus relief, concluded that "Gomez was denied the right of assistance of counsel of his choice and that such was a denial of due process law." *Gomez v. Heard*, 218 F.Supp. at 229. This Court affirmed, holding "that the district judge was right for the reason he gave": the defendant "was denied the right of counsel of his own choice in the hearing in the state court in which he was convicted and that such was a denial of due process." *Heard v. Gomez*, 321 F.2d at 89.

On the basis of these precedents, we are compelled to conclude that Petitioner in the case *sub judice* was denied due process when the trial judge denied the motion for a continuance and failed to take any steps to assure the continued attendance of Coleman despite his threat, made good the next day, to abandon his client.

The State of Alabama asserts that Petitioner was not denied a due process of right since he eventually received a vigorous defense through Hancock.[12] While there may be some disagreement among[13] and within[14] the Courts of Appeals, the rule of this Court is clear: it is of no relevance that substitute counsel has not been shown to have performed incompetently or ineptly. The claimed deprivation is an arbitrary encroachment on the right to counsel of choice not a claim of ineffective assistance rendered in the performance by the substitute counsel. *Gomez v. Heard, supra; Argo v. Wiman, supra.* See *White v. Beto*, 322 F.2d 214, 215–16 (5th Cir. 1963) (*dicta*), cert. denied, 376 U.S. 925, 84 S.Ct. 687, 11 L.Ed.2d 620 (1964). *Cf. Davis v. State, supra; Long v. State*, 119 Ga.App. 82, 166 S.E.2d 365 (1969).

The instant case, like the situation presented in *White v. Estelle, supra*, does not fit neatly into the "trial-court's-abuse-of-discretion-in-failing-to-grant-a-continuance" genré of cases. See *Ungar v. Sarafite, supra; United States v. Uptain, supra* (citations therein). Here the trial court had three alternatives: (1) grant the continuance; (2) deny the continuance but, assure the continued attendance of Petitioner's retained counsel; (3) deny the continuance and take no further action in response to Petitioner's retained counsel's threat to abandon his client. His improper resolution of the dilemma coupled with the retained attorney's later abandonment constitutionally flawed Petitioner's trial here. The trial court abused his discretion to control the trial and a manifest injustice resulted when he refused either to grant the motion for a reasonable continuance in order that the Petitioner have the assistance at trial of counsel whom he had chosen and retained or in some other manner assure the continued attendance of Petitioner's retained counsel, who announced an intention to abandon the Petitioner, and later did so. See *White v. Estelle, supra.* Cf. *United*

---

12. The Court of Criminal Appeals of Alabama concluded:

> Mr. Hancock conducted a vigorous defense on behalf of the defendant. Even a cursory examination of the two-volume record in this case reveals that the defendant was represented by able, diligent and resourceful counsel. It is difficult to fathom how a better defense could have been presented had Mr. Hancock been connected with the case from the very beginning. We find no evidence of abuse of discretion in this case.

> *Gandy v. State, supra* 269 So.2d at 144. While mere brevity of consultation is alone insufficient to establish a Sixth Amendment violation, *Daughtery v. Beto*, 388 F.2d 810 (5th Cir. 1967), cert. denied, 393 U.S. 986, 89 S.Ct. 461, 21 L.Ed.2d 447 (1968), we need not evalu-

ate Hancock's performance, given the result we reach.

13. Compare *Williams v. United States*, 332 F.2d 36 (7th Cir.), cert. denied, 379 U.S. 976, 85 S.Ct. 672, 13 L.Ed.2d 566 (1964) and *Majeske v. United States*, 266 F.2d 947 (9th Cir.), cert. denied, 361 U.S. 843, 80 S.Ct. 95, 4 L.Ed.2d 81 (1959) with *United States v. Tramunti*, 513 F.2d 1087 (2d Cir.), cert. denied, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975) and *United States v. Inman, supra.*

14. Compare *Releford v. United States*, 288 F.2d 298 (9th Cir. 1961) with *Majeske v. United States, supra.* Compare also *United States v. Johnston*, 318 F.2d 288 (6th Cir. 1963) with *Giacalone v. Lucas, supra.*

*States v. Collins*, 435 F.2d 698 (7th Cir. 1970), *cert. denied*, 401 U.S. 957, 91 S.Ct. 983, 28 L.Ed.2d 241 (1971).

We conclude that Petitioner was denied due process in two senses of the doctrine. First, as we have carefully set out above, the trial was rendered fundamentally unfair when Petitioner was effectively denied his right to choose his counsel. *Gomez v. Heard, supra; Argo v. Wiman, supra.* Second, focusing specifically on Coleman's conduct, his ultimatum to the trial court threatening the abandonment of his client and his following through on the threat, after the motion for the continuance was denied, resulted in Petitioner being defended by Hancock who was not at all familiar with the case. This blatant breach of the sacred loyalty owed his client was itself such ineffective assistance of counsel as to render this trial fundamentally unfair.[15] *Fitzgerald v. Estelle, supra*, 50% F.2d at 1336.

■ It is clear that the right to counsel may be waived altogether. Presumably, the right to counsel of choice and the right to effective assistance of counsel, as varia-

tions of the same theme, can also be waived.[16] On this record, there is no indication that Petitioner knowingly and voluntarily waived these rights. On the contrary, Petitioner, through Coleman who was about to abandon him and Hancock who ultimately conducted his defense, strongly protested the denial of the motion for a continuance.

We need not take pains to limit the precedential import of our holding. The unique facts of this case accomplish that for us. Indeed, this is not some "chicken-egg" conundrum which we are able or required to unscramble. Rather, this unique sequence of events occurred together and must be measured together, against the due process standard of fundamental fairness. We need not, and would not, hold that the denial of a motion for a continuance based solely on attorney inconvenience renders a trial fundamentally unfair. However, we do hold that the sequence of events presented here rendered the subsequent trial fundamentally unfair. This trial arrangement, fashioned by a retained lawyer's abandonment of his client and a trial court's insensi-

---

**15.** That the retained attorney, Coleman, breached a professional duty to his client, Petitioner, does not discount Petitioner's interests in having counsel of his choice assist him and having effective assistance. Rather, the breach of duty is a disciplinary matter between the trial court and the retained counsel:

[T]he law does not permit such conduct on the part of officers of the court when said conduct prejudices the rights of a defendant in a criminal case . . . . [T]he problem becomes a disciplinary matter between the trial court and the attorney, and not a matter of the trial court's requiring a defendant to go to trial with appointed counsel on short notice. *Argo v. Wiman*, 209 F.Supp. at 304–05.

DR 2–110 of the American Bar Association Code of Professional Responsibility provides in part:

DR 2–110 Withdrawal from Employment.
(A) In general.
(1) If permission for withdrawal from employment is required by the rules of a tribunal, a lawyer shall not withdraw from employment in a proceeding before that tribunal without its permission.
(2) In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including

giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.
Coleman seems to have violated the general rule that an attorney may not, in the absence of the client's consent, withdraw from a case without justifiable cause and then only after proper notice to his client and on leave of the court. *See Howard v. McCarson*, 215 Ala. 251, 110 So. 296 (1926); *Patterson v. State*, 51 Ala. App. 659, 288 So.2d 446 (Cr.App.1974).

**16.** *See Bonds v. Wainright*, 564 F.2d 1125 (5th Cir. 1977); *United States v. Gates*, 557 F.2d 1086 (5th Cir. 1977); *United States v. Terry, supra; United States v. Hall*, 448 F.2d 114 (2d Cir. 1971), *cert. denied*, 405 U.S. 935, 92 S.Ct. 971, 30 L.Ed.2d 810 (1972); *United States v. Cole*, 365 F.2d 57 (7th Cir.), *cert. denied*, 385 U.S. 1024, 1032, 87 S.Ct. 741, 17 L.Ed.2d 672 (1966); *Kobey v. United States*, 208 F.2d 583 (9th Cir. 1953); *United States ex rel. Adams v. Ragen*, 172 F.2d 693 (7th Cir.), *cert. denied*, 337 U.S. 920, 69 S.Ct. 1148, 93 L.Ed. 1729 (1949); *Hardie v. United States*, 22 F.2d 803 (5th Cir.), *cert. denied*, 276 U.S. 636, 48 S.Ct. 421, 72 L.Ed. 744 (1927).

tive acquiescence in the desertion despite practical alternatives, failed to provide Petitioner with due process.

In reaching this result we do not disparage the traditional notion that a motion for a continuance is committed to the trial court's discretion, in the first instance. We simply perform in our role of reviewing the exercise of discretion for abuse of constitutional dimension. This is not like the case in which a defendant offers no explanation for a last minute discharge and motion for a continuance other than an unexplained dissatisfaction with counsel.[17] Here Coleman and Hancock both fully explained the problem on behalf of Petitioner so that the trial judge was well aware of the situation and the consequences of his action. There is no indication that the motion was based on false information[18] or that Petitioner exhibited bad faith.[19] This is not a case in which the defendant was afforded an ample opportunity to secure counsel of his choice and attempted to manipulate the court's schedule by a last minute switch of attorneys or selection of an unavailable attorney.[20] Here the trial court did not investigate or consider reasonable alternatives to the simple denial of the motion.[21] Here there were no unique, countervailing factors to balance against the grant of the motion, other than traditional interests of judicial economy.[22] The resulting situation could have been avoided by either the grant of the continuance or the denial of the continuance with measures taken to assure Coleman's continued attendance.

We conclude that Petitioner was denied due process and reverse the district court's denial of the relief requested and remand

with instructions to grant the writ without prejudice to the State of Alabama to retry the Petitioner upon the indictment within a reasonable time.

REVERSED and REMANDED.

---

**17.** *See United States ex rel. Baskerville v. Deegan, supra; Gilmore v. United States,* 106 U.S. App.D.C. 344, 273 F.2d 79 (1959).

**18.** *See United States v. Harrelson, supra.*

**19.** *See Marxuach v. United States,* 398 F.2d 548 (1st Cir.), *cert. denied,* 393 U.S. 982, 89 S.Ct. 454, 21 L.Ed.2d 443 (1968).

**20.** *See United States v. Bragan,* 499 F.2d 1376 (4th Cir. 1974); *United States v. Sexton, supra; United States v. Hollis, supra; United States v. Grow, supra.*

**21.** *See United States ex rel. Carey v. Rundle, supra; Arndt v. United States,* 256 F.Supp. 822 (E.D.Wisc.1966).

**22.** *See United States v. Gray,* 565 F.2d 881 (5th Cir. 1978); *Arndt v. United States, supra. See also* note 9, *supra.*