[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 2, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-16320
Non-Argument Calendar
_____

D. C. Docket No. 05-00034-CR-ORL-31-JGG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

REBECCA K. ZANGWILL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 2, 2006)

Before BIRCH, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Appellant Rebecca K. Zangwill challenges her convictions for conspiracy to

make a counterfeit security and conspiracy to commit bank fraud, 18 U.S.C. § 371, bank fraud, 18 U.S.C. § 1344 and 18 U.S.C. § 2, and knowingly making, uttering, or possessing forged securities, 18 U.S.C. § 513(a) and 18 U.S.C. § 2. Zangwill contends that the district court's denial of her motion for a continuance improperly prevented her from obtaining her choice of counsel, and that this action infringed upon her rights under the Sixth Amendment. Because we disagree with Zangwill's contention, we AFFIRM her convictions.

## I. BACKGROUND

This case centers around a check fraud scheme involving Zangwill and other employees and officers of Sunny Sky Travel ("Sunny Sky"), a travel agency located in Fern Park, Florida. In the summer of 2003, Zangwill participated with Luke Amoresano, the owner of Sunny Sky and her then-boyfriend, in issuing and depositing large numbers of unauthorized checks that had been drawn on the bank accounts of Sunny Sky's customers. As a result of this scheme, approximately 140 customers of Sunny Sky had funds improperly withdrawn from their accounts.

On 9 February 2005, a federal grand jury in the Middle District of Florida returned a thirty-eight count indictment against Zangwill. Separate indictments were issued against Zangwill's co-conspirators at Sunny Sky, including Amoresano, who pled guilty. The indictment against Zangwill contained one

2

count of conspiracy to make a counterfeit security and conspiracy to commit bank fraud, in violation of 18 U.S.C. § 371, eight counts of bank fraud, in violation of 18 U.S.C. § 1344 and 18 U.S.C. § 2, and twenty-nine counts of making, uttering, or possessing forged securities in violation of 18 U.S.C. § 513(a) and 18 U.S.C. § 2. R1-1. Zangwill was arrested in New York after the indictment issued. R1-11.

At Zangwill's arraignment on 2 March 2005, the court appointed attorney Peter Warren Kenny of the Federal Public Defender's office to represent Zangwill. R1-12, 14. The court also scheduled the case for a jury trial before Gregory A. Presnell, District Judge for the Middle District of Florida, for the trial term commencing on 4 May 2005. R1-15 at 7. Kenny first entered his appearance as Zangwill's attorney on 8 March 2005. R1-17.

On 13 April 2005, Zangwill, through counsel, filed an unopposed motion to continue the trial until the July 2005 term. R1-26. Zangwill's motion cited both the government's voluminous documents and the need to locate and meet with additional witnesses as bars to having her counsel effectively try the case in May. Id. After discussing the motion at the parties' status conference on 14 April 2005 and directly seeking the input of Zangwill's counsel as to when he would prefer to try the case, R2 at 2, the court granted a continuance and the trial was moved from May 2005 to the trial term commencing 5 July 2005. R1-28.

On 16 June 2005, the parties met again for a status conference before Judge Presnell. It was at that conference that Zangwill's counsel, for the first time, advised the court that Zangwill had been negotiating with a second attorney, James Dauksch, to procure his representation. R3 at 2. Apparently Dauksch had not yet joined in the representation because he required full payment of a retainer fee prior to taking Zangwill's case. R1-45 at 2. When Zangwill's counsel mentioned the prospect of delaying the trial so as to accommodate the addition of Dauksch as counsel, Judge Presnell advised that Zangwill was "welcome to get whatever counsel she [chose], but it [would] not be a basis for another continuance." R3 at 3. Due to a scheduling conflict in Judge Presnell's calendar, after the status conference adjourned, Zangwill's case was assigned to a new judge, Patricia C. Fawsett. Id. at 3-4; R1-33.

Another status conference occurred on 21 June 2005, this time before Judge Fawsett. At that conference, the parties informed the court that there was a lingering question as to whether Zangwill was going to obtain new counsel. In response, Judge Fawsett advised the parties that she had agreed to preside over Zangwill's case with the clear understanding that it would be tried in July. R4 at 2. Accordingly, the trial date was set for 14 July 2005. Id. at 4, 5. Judge Fawsett further instructed Zangwill's counsel to "explain to [Zangwill] there will not be

4

another continuance." Id. at 3.

On 5 July 2005, Zangwill, through counsel, filed a second motion to continue the trial, this time seeking a continuance until September. The motion indicated that Dauksch's retainer fee had now been paid and that he was ready to undertake the representation. R1-45 at 2-3. However, because the trial was scheduled to commence in "eight working days," the motion argued that a continuance was needed so that Dauksch could adequately "familiarize himself" with the case. Id. at 3. The motion also indicated that Dauksch had prior commitments that conflicted with a July trial date. Id. Finally, Zangwill's motion asserted that a September trial date would be a minimal delay, as it was "only six months after arraignment and seven months after indictment." Id. at 7-8. The government opposed Zangwill's motion.

The district court denied the motion for a continuance on the day it was filed. R1-46. The order denying the motion observed not only that "defendant [had] been forewarned that a desire to change counsel [would] not result in a second continuance of the trial," id., but also that the government had already filed jury instructions in preparation for trial. Id. Finally, the order noted that "the Court [had] rearranged its schedule to be available to conduct the trial commencing on the date certain." Id.

Zangwill's trial commenced on 14 July 2005, and lasted for five days. See R5; R6; R7; R8; R9. The government called fifteen witnesses, including Zangwill's alleged co-conspirator, Amoresano, who was transported to Florida from Ohio (where he was serving his sentence). R1-39. Zangwill did not call any witnesses in her defense. See R7. After the jury convicted Zangwill of all thirty-eight counts, the district court sentenced her to 46 months of imprisonment and three years of supervised release. R1-84 at 1-3.

## II. DISCUSSION

On appeal, Zangwill argues that the court's denial of her second motion for a continuance wrongfully deprived her of the counsel of her choosing, thereby violating her rights under the Sixth Amendment. We review a district court's disposition of requests for trial continuances for abuse of discretion. United States v. Baker, 432 F.3d 1189, 1248 (11th Cir. 2005); United States v. Bowe, 221 F.3d 1183, 1189 (11th Cir. 2000).

"The Sixth and Fourteenth Amendments to the U.S. Constitution guarantee that any person brought to trial in any state or federal court must be afforded the right to assistance of counsel before he or she can be validly convicted and punished by imprisonment." United States v. Verderame, 51 F.3d 249, 251 (11th Cir. 1995). A "necessary corollary" of the right to counsel is a defendant's right to

have "both a fair opportunity to be represented by counsel of his own choice and sufficient time within which to prepare a defense." Baker, 432 F.3d at 1248 (quoting Gandy v. Alabama, 569 F.2d 1318, 1321-22 (5th Cir. 1978)). In some cases, a trial court's denial of a continuance request "may be so arbitrary and so fundamentally unfair" as to amount to a wrongful deprivation of the due process right to counsel. Gandy, 569 F.2d at 1323.[1]

"However, the Supreme Court has made clear that not every denial of a request for a continuance is a denial of due process." Id. at 1322; Ungar v. Sarafite, 376 U.S. 575, 589-91, 84 S. Ct. 841, 849 (1964). Rather, "the proper exercise of the trial court's discretion . . . requires a delicate balance between the

---

[1] The parties stayed a decision on this appeal pending the Supreme Court's decision in United States v. Gonzalez-Lopez, No. 05-352, ___ U.S. ___ , 126 S. Ct. 2557 (June 26, 2006). That case established that "[w]here the right to be assisted by counsel of one's choice is wrongly denied . . . it is unnecessary to conduct an [ineffective assistance of counsel] inquiry or a prejudice inquiry to establish a Sixth Amendment violation." Id. at ___, 126 S. Ct. at 2563. Put another way, the Court stated that a Sixth Amendment violation occurs the moment one's choice of counsel is erroneously deprived; no additional showing of "prejudice" to the defendant at trial is required. Id. Zangwill argues that this decision bolsters her appeal.

However, both parties in Gonzalez-Lopez had conceded on appeal that the trial court had erroneously deprived the defendant of his right to counsel of his choosing. Id. at ___, 126 S. Ct. at 2561. Thus the sole legal issue before the Supreme Court was what level of trial prejudice– if any– needed to be shown once it was determined that an erroneous deprivation of one's counsel had occurred. Id. at ___, 126 S. Ct. at 2562-64. In order for the automatic rule of Gonzalez-Lopez to apply, in other words, it must first be shown that the trial court "wrongly" or "erroneously" denied the defendant his choice of counsel. Accord United States v. Hickey, No. 97-0218, slip op. at 14 (N.D. Cal. July 6, 2006). Here, the issue before us is whether the trial court's denial of Zangwill's continuance motion was so unfair and arbitrary as to constitute an "erroneous" deprivation of counsel in violation of the Sixth Amendment. Because we hold that it was not, Gonzalez-Lopez's rule is inapplicable to Zangwill's case.

7

defendant's right to adequate representation by counsel of his choice and the general interest in the prompt and efficient administration of justice." Baker, 432 F.3d at 1248 (citations omitted). Indeed, in light of the myriad scheduling burdens that a court faces in "assembling the witnesses, lawyers, and jurors at the same place at the same time," the Supreme Court has counseled that "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to assistance of counsel." Morris v. Slappy, 461 U.S. 1, 11-12, 103 S. Ct. 1610, 1616 (1983) (citations omitted). See also United States v. Gonzalez-Lopez, ___ U.S. ___, 126 S. Ct. 2557, 2565-66 (June 26, 2006) (citations omitted) (recognizing "a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar").

We have enumerated a number of factors that should be considered in determining whether a denial of a continuance impinged upon the defendant's "fair and reasonable" opportunity to choose counsel, including: "(1) the length of the delay; (2) whether the counsel who becomes unavailable for trial has associates prepared to try the case; (3) whether other continuances have been requested and granted; (4) the inconvenience to all involved in the trial; (5) whether the requested

continuance is for a legitimate reason; and (6) any unique factors." Baker, 432 F.3d at 1248 (citing Bowe, 221 F.3d at 1190)).

Applying this analysis to the facts of this case, we are unable to conclude that the trial court abused its discretion in denying Zangwill's motion for a continuance. The proposed continuance would have delayed the trial for a period of approximately a month and a half, which Zangwill characterizes as negligible. See Appellant's Brief at 16. However, Zangwill had already succeeded in postponing the trial for a period of two months (from May to July 2005) at the time she made her second continuance request. In addition, as the trial court order's observed, the first continuance– in April 2005– was purportedly intended to give Zangwill's then-counsel, Kenny, "adequate time to prepare" a defense in the case. R1-46. In fact, at the April 14 status conference between the parties, the court directly sought Kenny's input as to which month he would feel sufficiently prepared to try the case. See R2 at 2.

Despite these accommodations, and despite the fact that Zangwill was on notice in April 2005 that her trial was scheduled to begin sometime in July, she appears to have waited a month after the April status conference before she first sought to obtain Dauksch as her replacement counsel. R1-45 at 2. Moreover, although Zangwill apparently began seeking Dauksch's representation sometime in

9

May 2005, the court was not advised of this development until mid-June 2005, weeks before the trial was scheduled to begin. Finally, we note that while there were ongoing (and vague) discussions between the parties about the prospect of a continuance based on the addition of Dauksch to the case, a motion to continue the trial on that basis was not ultimately filed until 5 July 2005, just days before her trial. In summary, we agree with the court's finding that Zangwill had "more than adequate time to engage counsel." R1-46. Even assuming her motives were proper, it seems clear that Zangwill acted in a dilatory manner in attempting to secure Dauksch's legal representation.

Moreover, the denial of Zangwill's motion must be weighed in light of the inconveniences that would have resulted from an additional delay in Zangwill's trial. At the time the continuance was sought, the government had obtained a writ and had arranged for the transportation of one witness from a federal penitentiary in Ohio. Id. Jury instructions had already been filed in the case. Id. Additionally, the government had prepared and scheduled the testimony of fifteen witnesses, both law enforcement officers and victims, all of whom later testified at Zangwill's trial. R5; R6; R7. Contrary to Zangwill's assertions, see Appellant's Reply Brief at 1-3, we conclude that a second continuance would have caused considerable inconvenience to the government.

10

Furthermore, an additional delay would have caused inconvenience to the court and its docket. In light of the large number of documents and exhibits involved in the case, the court had expressed concern about the administrative challenge of trying Zangwill's case even before her continuance motion was filed. See R4-103 at 3-4. In scheduling the trial date for July 14, the court indicated to the parties that it had "rearranged [the court's] schedule" to accommodate Zangwill's four to five day trial. R1-46. Indeed, Judge Fawsett expressly advised the parties that all of the cases on the court's docket were being scheduled around Zangwill's trial. R4-103 at 5. As a final matter, the court directly warned Zangwill– weeks before her motion was filed– that it would not grant a second continuance based solely on the addition of a new attorney to her case. R1-46; R4 at 5. See also R3. In applying the six-factor test to the facts of this case, therefore, we cannot conclude that the court abused its discretion in denying Zangwill's motion for a continuance, thereby erroneously depriving her of counsel of her choosing.

Nor do our prior precedents governing the denial of continuances lend support to Zangwill's erroneous deprivation claim. Zangwill's claim falls short of the egregious due process deprivation that was found in Gandy. In Gandy, the defendant's continuance motion was denied after his attorney "sudden[ly] and

11

abrupt[ly]" abandoned him on the very day his trial was scheduled to begin, United States v. Barrentine, 591 F.2d 1069, 1075 (5th Cir. 1979), leaving him with replacement counsel who "had no relation to the case." Gandy, 569 F.2d at 1320. There we found that the court's harsh denial of the continuance motion constituted "an insensitive acquiescence in the [attorney's] desertion" of his client, and concluded that the denial had thus violated the defendant's rights under the Sixth Amendment. Id. at 1326-28.

The facts of this appeal are much more analogous to the unsuccessful denial of continuance claim found in Barrentine, where the defendants were aware of the case against them for months; they discovered a conflict in their attorney's schedule shortly after they sought to retain him; and they had already been advised of the court's position that the trial would go forward with or without their new counsel. 591 F. Supp. 2d 1074-75. As in Barrentine, in this case Zangwill failed to make proper arrangements to obtain Dauksch in a prompt manner, and then took a gamble by "waiting until the eleventh (or at least the tenth) hour to seek a solution" to the problem of her legal representation. Baker, 432 F. 3d at 1252. See also id. (finding that defendant was aware of his desired counsel's unavailability for a long time, but that he failed to take steps to procure replacement counsel).

In summary, we cannot conclude that the trial court's denial of Zangwill's

12

motion for a continuance constituted an abuse of discretion by the court and thereby erroneously deprived her of her constitutional rights. The court weighed the competing interests at stake, and concluded that an additional delay in the interests of accommodating Zangwill's new counsel, Dauksch, was outweighed by the inconvenience to the government and the burden on the court. We cannot say that this determination was so arbitrary and fundamentally unfair as to violate Zangwill's Sixth Amendment rights. As the Supreme Court has stated in assessing these constitutional challenges: "These matters are, of course, arguable, and other judges in other courts might well grant a continuance in these circumstances. But the fact that something is arguable does not make it unconstitutional." Ungar, 376 U.S. at 591, 84 S. Ct. at 851.

## III. CONCLUSION

Appellant Zangwill appealed to this court, arguing that the trial court's denial of her motion for a continuance constituted an abuse of discretion, and that the court's action thereby improperly prevented her from obtaining the counsel of her choice as guaranteed by the Sixth Amendment. Upon a careful review of the record, we cannot conclude that the trial court erroneously deprived her of counsel of her choosing. Accordingly, Zangwill's convictions are **AFFIRMED**.

13