Jesse James FORD, III,
Petitioner-Appellant,

v.

Thomas ISRAEL, et al.,
Respondents-Appellees.

No. 82–1453.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 28, 1982.
Decided March 3, 1983.

Lester A. Pines, Madison, Wis., for petitioner-appellant.

Thomas J. Balistreri, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for respondents-appellees.

Before WOOD and POSNER, Circuit Judges, and MORAN, District Judge.*

* Of the Northern District of Illinois.

POSNER, Circuit Judge.

In 1972 a group of masked men robbed Harold's Club, a restaurant and bar near Madison, Wisconsin, and shot and killed the bartender and a patron. The robbers were caught and in 1973 were tried and convicted in a Wisconsin state court. Among the defendants was Jesse James Ford, III, who was convicted of first-degree murder and armed robbery and sentenced to life imprisonment. After exhausting his state remedies, see *State v. Shears*, 68 Wis.2d 217, 229 N.W.2d 103 (1975), Ford brought a habeas corpus proceeding in a federal district court, 534 F.Supp. 1128, in Wisconsin. The court denied his petition for habeas corpus, and he has appealed to this court, raising three grounds. The most substantial is a claim of denial of counsel. We discuss that last.

█ Ford claims that the jury instructions violated due process of law by allowing the jury to convict him without being satisfied that he was guilty beyond a reasonable doubt. The jury was instructed: "When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all of the natural, probable and usual consequences of his deliberate acts. If one person assaults another violently with a dangerous weapon likely to kill, and the person thus assaulted dies therefrom, then, when there are no circumstances to prevent or rebut the presumption, the legal and natural presumption is that death was intended." The same instruction was held to be constitutional in *Pigee v. Israel*, 670 F.2d 690 (7th Cir.1982), with the sole material difference that the phrase "and the person thus assaulted dies therefrom" did not appear in the instruction upheld in *Pigee* (for the text of that instruction see 670 F.2d at 697 n. 1 (dissenting opinion)). The reason is that *Pigee* involved attempted murder, while this case involves actual murder. Even so, as the instruction goes to intent rather than effect, it is a little difficult to understand why the quoted phrase was added; but perhaps the thinking was that if the victim actually dies that is additional evidence that the assailant really intended

to do him in. It is not very powerful evidence, so if all the instruction had said was that the jury could infer intent to kill from the fact that the victim had died a serious constitutional issue would be presented. But of course that is not all the instruction said; and read as a whole it seems to us insignificantly if at all more adverse to the defendant than the instruction upheld in *Pigee*.

Ford's next ground of appeal is based on the Fifth Amendment. His defense at trial was that he had withdrawn from the conspiracy before the robbers entered Harold's Club. On cross-examination the prosecutor asked him whether he had told this story to any law enforcement officer before the trial, and he said no; and in closing argument the prosecutor asked rhetorically: "if defendant Ford didn't go into Harold's Club, why didn't he tell law enforcement officials before?" No objection was made to these questions and the Wisconsin Supreme Court held that the failure to object waived any constitutional claim that Ford might have had.

█ Although at the time of trial it was unclear whether the use of a criminal defendant's silence to impeach his testimony violated his Fifth Amendment right against being compelled to incriminate himself, three years later the Supreme Court held that it did. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). But the failure of Ford's counsel to object to the question and to the use made of the answer in the closing argument was an effective waiver unless there was good cause for not objecting and the failure to object was prejudicial to Ford. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). As we think it was not prejudicial we need not consider whether there was good cause for it. Ford's defense that he had withdrawn from the conspiracy (he admitted having participated in planning the robbery and having accompanied the robbers to the scene of the crime) depended on his testimony that he had not entered Harold's Club. But there was very strong evidence that he had. Al-

though positive identification by the staff and patrons of Harold's was impossible because Ford had been masked, he admitted that he had been wearing a light-colored wide-brimmed hat and a black leather jacket and carrying a pistol; one of the patrons at Harold's testified that a man so dressed and equipped had herded the patrons out of the dining area of Harold's; and none of the other robbers fitted this description. In addition, a conspirator who turned state's evidence testified that he had seen Ford inside Harold's standing over one of the men who had been shot. To this and other evidence placing Ford in Harold's during the robbery the inference that the prosecutor invited the jury to draw from the fact that Ford had not told his story to law enforcement officers before the trial added the merest crumb. We cannot believe a reasonable jury would have acquitted Ford but for that crumb.

We come finally to the issue of denial of right to counsel. Ford was indigent, and Rosen, a young lawyer from the public defender's office, was appointed to represent him. But then Ford's parents retained a Chicago lawyer, Grant, for him. Grant had not been admitted to practice in Wisconsin, however, and local counsel must appear in every case tried in a Wisconsin court, though nonresident counsel may appear in association with the local counsel. Wis. S.Ct. Rule 10.03(4), 36 Wis.2d viii (1968). Rosen offered to serve as local counsel but the trial court ruled that Ford would have to retain—that is, pay for—a local lawyer if he wanted Grant to defend him. Ford's parents balked at putting up additional money for local counsel, whereupon Grant withdrew and Rosen was reappointed to defend Ford. He did so, and Ford, though naturally unhappy at Rosen's failure to have raised the *Doyle* issue at trial, does not argue that Rosen represented him incompetently.

Rules requiring that local counsel appear in all litigation are, so far as we are aware, universal, and their constitutionality was upheld in *Martin v. Walton,* 368 U.S. 25, 82 U.S. 1, 7 L.Ed.2d 5 (1961) (per curiam). But the question in this case is not their constitutionality in the abstract but as applied to deprive a criminal defendant of the counsel of his choice. It is true that the Sixth Amendment (as held applicable to the states through the due process clause of the Fourteenth Amendment) does not guarantee an indigent criminal defendant the appointment of the lawyer of his choice, *United States v. Davis,* 604 F.2d 474, 478 (7th Cir.1979); and the Second Circuit, following *Martin v. Walton,* has held that a criminal defendant has no right to appointment of out-of-state counsel, *Bedrosian v. Mintz,* 518 F.2d 396, 400–02 (2d Cir.1975). But it does not follow that the state may arbitrarily refuse to allow the defendant to retain the lawyer of his choice—that it may say to Ford, we will not let you retain any lawyer who charges less than $100 an hour, or does not belong to the American College of Trial Lawyers or the American Civil Liberties Union.

The local-counsel rule, though it has about it the air of a guild restriction and may for all we know be motivated by a desire to increase the fees of Wisconsin lawyers at the expense of lawyers from other states, is not so arbitrary as these examples; and, paradoxically, is less arbitrary in a criminal than in a civil case. It is a favorite tactic of an unsuccessful criminal defendant to complain, on appeal or in a habeas corpus proceeding, that he did not have effective assistance of counsel at trial; and if his only trial counsel was from out of state, and made errors of criminal procedure that a local counsel would not have made, a basis is laid for a colorable complaint of ineffective assistance of counsel. If as Ford contends Wisconsin must in every criminal case waive its rule requiring retention of local counsel, criminal defendants will find it easier to draw out the proceedings against them by complaining that they were denied effective assistance of counsel—a complaint that can be raised against retained as well as appointed counsel and is judged under the same standards in both types of case. *Cuyler v. Sullivan,* 446 U.S. 335, 344–45, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). In the present case,

it is true, local counsel—Rosen—was willing to serve without fee, and if he had been allowed to do so Ford would have had the counsel of his choice. But Rosen is paid by the state, so it would have meant giving a man who had retained one lawyer another free of charge. The state was not required to do that. The choice was Grant or Rosen; and the state had a reason why it could not be Grant.

That reason might have to give way if it were a great hardship to Ford to be denied Grant's services, but we do not think it was. Admittedly, the state prevented Ford's parents from hiring a particular lawyer, and we may go further and assume that by doing so it prevented them from hiring any lawyer not admitted to practice in Wisconsin, because they could afford only one lawyer. But that left the whole bar of Wisconsin. We cannot believe that the money that Ford's parents were willing to pay Grant could not have hired a lawyer as good, or almost as good, as Grant, but admitted in Wisconsin. That they made no effort to do so suggests that they and their son considered Rosen an acceptable second choice. They did not have to accept him. They could have canvassed the Wisconsin bar for someone willing to defend Ford at the same price that Grant had demanded.

█ Rosen defended Ford competently, as is conceded. True, he did not object to the cross-examination and closing argument regarding Ford's failure to tell his story to law enforcement officers before the trial, but we have said that it would have made no difference to the outcome of the trial had the objection been made and sustained. Since Rosen was competent, Ford was not denied a fair trial; and while the rule requiring local counsel may be provincial or protectionist or worse, we cannot say that as applied in this case it deprived Ford of any rights that he has under the Sixth Amendment.

AFFIRMED.

MORAN, District Judge, dissenting.

I dissent from that portion of the majority opinion which holds that Ford was not denied his Sixth Amendment right to counsel when the state trial court refused to allow Ford's chosen out-of-state attorney to represent him unless he also retained local counsel to assist in the trial. The majority, I think, misstates Ford's claim when it describes the issue as being whether "Wisconsin must in every criminal case waive its rule requiring retention of local counsel...." I believe, rather, that the question is whether an admittedly valid local counsel rule may be interpreted in a manner that deprives a criminal defendant of his chosen and retained non-resident attorney simply because he cannot also afford to pay for local counsel.

The majority properly characterizes the local counsel rule as having "about it the air of a guild restriction ...." Such "guild restrictions" have, in recent years, come under increasing attack by the Supreme Court. For example, in *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) the Court struck down, as violative of the antitrust provisions of the Sherman Act, 15 U.S.C. § 1, *et seq.,* fee schedules published by the county bar association which set minimum fees chargeable for various types of legal services. It noted that "[i]n the modern world it cannot be denied that the activities of lawyers play an important part in commercial intercourse, and that anti-competitive activities by lawyers may exert a restraint on commerce." *Id.* at 789, 95 S.Ct. at 2014.

The Court has been, if anything, more vigilant where state regulation of the legal profession implicates the constitutional rights of others. In *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), it held that a state rule prohibiting solicitation of legal business by lawyers or organizations employing lawyers interfered impermissibly with the First Amendment rights of the petitioner, its staff attorneys, and its members to associate for the purpose of assisting others in vindicating their constitutional and other legal rights. The Court there set the standard for examining state regulations which impinge upon constitutional rights: "only a compelling state

interest in the regulation of a subject within the state's constitutional power to regulate can justify limiting First Amendment freedoms." *Id.* at 438, 83 S.Ct. at 340. The state had failed to "advance any substantial regulatory interest" that would justify its broad anti-solicitation rule. *Id.* at 444, 83 S.Ct. at 343.

More recently, in *In re Primus,* 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978), the Supreme Court overturned a disciplinary reprimand of an attorney who, on behalf of the American Civil Liberties Union, had solicited a prospective litigant for a civil rights suit. In that case the Court recognized that "[t]he States enjoy broad power to regulate 'the practice of professions within their boundaries,'" *id.* at 422, 98 S.Ct. at 1899 (quoting *Goldfarb v. Virginia State Bar, supra*), and suggested that such power may not be treated lightly where state regulation does not conflict with other constitutional rights, *id.,* (citing *Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978)). However, it reaffirmed the doctrine of *NAACP v. Button* that, where First Amendment freedoms are involved, the prohibited conduct must in fact present a substantial danger to the interests sought to be protected by the regulation. 436 U.S. at 434, 83 S.Ct. at 338.

Even where less protected commercial speech is implicated, the Court has carefully scrutinized state regulation of the legal profession. In *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), it held that a state ban on the advertising of legal fees infringed upon the First Amendment right of the public to receive information and that the asserted reasons for the ban did not justify such infringement.

It is true that the Supreme Court has on numerous occasions upheld rules limiting the practice of out-of-state attorneys, at least where such rules are challenged on the ground that they deprive lawyers of the right to practice their profession. *See Leis v. Flynt,* 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979) (expressly noting that the Sixth Amendment rights of the party seeking out-of-state representation are not considered. 439 U.S. at 442, n. 4, 99 S.Ct. at 700, n. 4); *Martin v. Walton,* 368 U.S. 25, 82 S.Ct. 1, 7 L.Ed.2d 5 (1961). The basic premise of these decisions is that there is no constitutional right to practice law in state courts without meeting the state's admission requirements. *Leis v. Flynt,* 439 U.S. at 443, 99 S.Ct. at 701. Where, however, the local counsel rules or other regulations governing practice before the state courts impinge upon the constitutional rights of others, I think the more careful scrutiny of *NAACP v. Button* and its progeny is demanded. *See Ross v. Reda,* 510 F.2d 1172, 1173 (6th Cir.), *cert. denied,* 423 U.S. 892, 96 S.Ct. 190, 46 L.Ed.2d 124 (1975) (where Sixth Amendment right to counsel is involved, power to exclude out-of-state counsel is not absolute); *Lefton v. City of Hattiesburg, Mississippi,* 333 F.2d 280, 285 (5th Cir.1964) (applying *NAACP v. Button* analysis to local counsel rule). *Cf. Gandy v. State of Ala.,* 569 F.2d 1318, 1323 (5th Cir. 1978) (balancing criminal defendant's right to counsel against state's interest in prompt and efficient administration of justice).

Here, the constitutional right affected by the state trial court's application of Wisconsin's local counsel rule was defendant's Sixth Amendment right to counsel of his choice. This circuit has recognized the importance of the choice element of this right. "If the Sixth Amendment right to the effective assistance of counsel means anything, it certainly means that it is the actual choice of the defendant which deserves consideration." *U.S. v. Seales,* 461 F.2d 345, 358 (7th Cir.1972). And the Supreme Court, in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), implicitly recognized its significance when it held that the Sixth Amendment right to counsel includes the right to choose not to be represented by an attorney. It is no answer to say, as does the majority, that defendant could have selected some other attorney from the Wisconsin bar since the element of choice, in the context of the peculiar relationship of trust and confidence between attorney and client, would have been absent.

The right to counsel of one's choice is, of course, not absolute. A criminal defendant's "right to choose counsel may not be subverted to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." *Gandy v. State of Ala.,* 569 F.2d at 1323. *See United States ex rel. Spurlark v. Wolff,* 683 F.2d 216, 220 (7th Cir.1982), *aff'd in relevant part on rehearing,* 699 F.2d 354 at 362 (7th Cir.1983) (*en banc*); *U.S. v. Hampton,* 457 F.2d 299, 301 (7th Cir.1972) (indigent defendant who had appointed competent trial counsel was not deprived of Sixth Amendment rights when court denied request for continuance on day of trial after defendant stated he had obtained funds to hire attorney but had not actually retained one). And in this circuit a criminal defendant who cannot afford to hire his own attorney has no right to choose appointed counsel as long as the method or system of appointment results in selection of "competent counsel who is uncommitted to any position or interest which would conflict with providing an effective defense." *U.S. v. Davis,* 604 F.2d 474, 479 (7th Cir.1979). But neither of these circumstances is present in this case. Ford, through his parents, had the money to retain Grant, his chosen attorney, and there is no indication in the record that that choice would have obstructed or interfered with the fair administration of justice.

The question then is whether Ford's choice of counsel could be abrogated by an interpretation of Wisconsin's facially valid local counsel rule to require him to pick between also hiring local counsel (which he could not afford) or foregoing his retained counsel and having a Wisconsin attorney appointed for him. Since the first option was foreclosed by Ford's limited resources, Ford had no choice but to give up his retained attorney, under the trial court's interpretation of the local counsel rule.

I do not think that interpretation can pass constitutional muster. The state does have an interest in the protection of parties litigating in its courts by assuring that they will have the service of an attorney familiar with local law and practice and a concern for the smooth and fair operation of the court system.[1] It also has an interest in minimizing its financial burdens. Those interests could have been served by the court explaining to defendant that local counsel would be more familiar with local practice and that representation by his chosen attorney posed some risks, by sufficient inquiry of counsel to satisfy itself that the chosen counsel was competent to undertake the defense, or by appointing local counsel solely to assist in court, thus avoiding the necessity of appointed counsel being responsible for trial preparation. Instead, the state expended at least as much and probably more of its resources than it would have had the trial court simply accepted Ford's request for appointment of a Wisconsin attorney to act as local counsel. Since no compelling state interest was served by the trial court's interpretation and application of the local counsel rule in this case, I conclude that Ford was unconstitutionally deprived of his right to counsel of his choice.

---

1. In an era of instant electronic communication and jet travel, the appearance of out-of-state counsel appointed *pro hac vice* is, however, particularly in the federal system, a familiar occurrence, with local counsel often attending for the first hour or so of trial.