**UNITED STATES of America, Plaintiff,**

v.

**SEVENTY THOUSAND FOUR HUNDRED AND SEVENTY SIX DOLLARS IN U.S. CURRENCY, Defendant.**

**Claim of Charles MOBLEY, Doron Weinberg.**

**No. C–87–0601–CAL.**

United States District Court, N.D. California.

Sept. 24, 1987.

Rodolfo M. Orjales, Asst. U.S. Atty., San Francisco, Cal., for plaintiff.

Doron Weinberg, Larson and Weinberg, San Francisco, Cal., for defendant.

## OPINION REGARDING EXCLUSION OF ATTORNEY FEES FROM FORFEITURE

LEGGE, District Judge.

Claimants Mobley and Weinberg bring this motion to exclude from forfeiture a portion of a sum of money seized by federal authorities under 21 U.S.C. § 881. Claimants seek an order excluding $50,000 of the seized money, because it was assigned by Mobley to Weinberg as attorney fees for Weinberg defending Mobley in state criminal proceedings. They claim that either Weinberg is an "innocent owner" under section 881, or alternatively that the Sixth Amendment of the U.S. Constitution mandates the exclusion of funds to pay reasonable attorney fees.

The motion for exclusion was heard by this court on July 10, 1987. After considering the moving and opposing papers, the record, oral arguments, and the applicable law, this court granted claimants' motion in an order dated August 11, 1987. This opinion is to explain the court's reasoning, since the issues raised here have not been resolved by the Ninth Circuit or the U.S. Supreme Court.[1]

### I.

For the purposes of this motion, the facts underlying the seizure and assignment are undisputed.[2] On September 11, 1986, San Francisco police officers conducted a search of Mobley's residence. During this search the police found and seized $70,476 in cash. The police also discovered drug paraphernalia, weapons, and cocaine outside the bedroom window.

On September 16, 1986, Mobley was arrested and charged in state court with one count of possession of cocaine for sale. Mobley hired Weinberg to represent him in the criminal proceeding and assigned $35,000 of the seized money to Weinberg as attorney fees for Mobley's defense.

The money was initially held by the San Francisco police. On September 17, 1986, pursuant to a federal warrant, the money was seized by the United States under 21 U.S.C. § 881(a)(6).[3] A copy of Mobley's assignment to Weinberg was served on the U.S. Marshal five hours before that seizure by the United States.

Mobley was later arrested on two new charges resulting from a subsequent search of his residence, and he then assigned an additional $15,000 of the seized money to Weinberg for representation on the additional charges.

Mobley claims, and the United States does not dispute, that Mobley does not have any other funds or assets available to pay attorney fees for his defense in the criminal cases.

### II.

This action is brought by the United States as a civil forfeiture proceeding under 21 U.S.C. § 881. The statute provides in part that:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(6) All moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys ... used or intended to be used to facilitate any violation of this subchapter....

---

**1.** The court acknowledges the assistance of Barbara W. Staman in the preparation of this opinion.

**2.** Claimant Mobley reserves the right to challenge the allegations related to the search in any related action.

**3.** San Francisco Police Sergeant Robert Bullard is cross designated as a Special Deputy United States Marshall. Part of his duties include reviewing cases involving asset seizures and assisting in initiating federal forfeitures. Sergeant Bullard obtained the federal warrant authorizing the United States' seizure.

There are also criminal forfeiture statutes, such as 21 U.S.C. § 853, which provide for forfeiture of property upon conviction of certain crimes.[4] This opinion will include discussion of section 853, since it is similar to section 881 and much of the relevant case law has developed under section 853.

### III.

Section 881(a)(6) provides an exception from forfeiture if the owner was unaware of the illicit use or origin of the property. The exception states that

no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

The exemption created by this section is generally referred to as the "innocent owner" defense. Section 853 also provides for an "innocent owner" defense. However, unlike section 881, section 853 explicitly sets out the circumstances by which a subsequent transferee can take property and not become subject to forfeiture. The statute excludes from forfeiture property which is transferred to a bona fide purchaser for value who takes the property without cause to believe that the property was subject to forfeiture. 21 U.S.C. § 853(c).

■ The claimants bear the burden of establishing the defense. *United States v. Four Million, Two Hundred Fifty-Five Thousand*, 762 F.2d 895, 906–07 (11th Cir. 1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986); *United States v. One 1976 Lincoln Continental Mark IV*, 584 F.2d 266, 268 (8th Cir.1978).

It is undisputed that the assignment here was in connection with a bona fide contract for Weinberg's services as an attorney in defense of the criminal charges against Mobley. Claimants argue that Weinberg is an "innocent owner" of his interest in the money, because he received the assignment without any knowledge of the alleged underlying drug transaction.

Most of the case law has applied the innocent owner defense in situations where the claimant's property was *used* by a third party in an illegal transaction. Those cases generally involved property under section 881(a)(4), dealing with conveyances. *See, e.g., One Blue 1977 AMC Jeep CJ–5 v. United States*, 783 F.2d 759 (8th Cir.1986) (owner claimed that her son used her car without her consent); *United States v. 1966 Beechcraft Aircraft*, 777 F.2d 947, 951–52 (4th Cir.1985) (owner of airplane was not "innocent owner" when he showed "conscious indifference" to the use of his plane); *One 1976 Lincoln*, 584 F.2d at 267–68 (record owner of car was not "innocent owner" when her paramour, whom she knew used cocaine and had been convicted of a drug offense, "actually owned" and controlled car).

■ The burden of proof which is imposed on the claimants in those cases is high. The owner of the property must show not only show that he was uninvolved in and unaware of the wrongful activity, but also that he took reasonable precautions to ensure that the property would not be used for illicit purposes. *One Blue 1977 AMC Jeep*, 783 F.2d at 762; *1966 Beechcraft*, 777 F.2d at 951; *One 1976 Lincoln*, 584 F.2d at 268. This standard was taken from dicta in *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 689, 94 S.Ct. 2080, 2094–95, 40 L.Ed.2d 452 (1974), in which the U.S. Supreme Court construed a Puerto Rican statute substantially similar to section 881(a)(4).

■ Section 881 does not expressly deal with transfers of property to a claimant *after* the transaction or the seizure. The claimants here cite certain cases in which the court enquired whether the transferee had actual knowledge of the underlying transactions. But in none of those cases did the transferee obtain the interest in the property after government authorities had

---

**4.** Section 853 provides for forfeiture of certain property upon conviction in a continuing criminal enterprise (21 U.S.C. § 848) or for import or export of narcotics (21 U.S.C. § 951, *et seq.*). 18 U.S.C. § 1963 is a parallel forfeiture statute, applicable upon conviction under the Racketeer Influenced and Corrupt Organizations Act, §§ 1961–1968.

seized the property. In addition, the courts in both *Four Million, Two Hundred Fifty-Five Thous.*, 762 F.2d at 906 n. 24, and *United States v. Premises Known as 2639 Meetinghouse*, 633 F.Supp. 979, 992–93 (E.D.Pa.1986), noted that a lower standard of knowledge might be sufficient to bar the defense, but declined to reach the issue. Instead, both courts found that the claimants had not met their burden of proof in establishing the absence of actual knowledge. Therefore the property was forfeitable. *See also United States v. $47,875*, 746 F.2d 291, 292 & n. 1 (5th Cir.1984) (in holding that claimants lacked standing, appellate court noted but did not decide the applicability of *Calero–Toledo* standard imposed by district court).

This court concludes, from the language of section 881 and from the reasoning of the above cases, that the "innocent owner" defense does not apply when the money was already seized by the authorities and was then assigned for the defense of the owner in a criminal proceeding arising from the seizure. It is immaterial whether the money was or was not in the hands of the federal marshal at the time the assignment was made. The money was taken by police officers during the search of Mobley's house and the seizure of drugs and other paraphernalia. After that, Weinberg could not become Mobley's attorney for his defense and also take the money as an "innocent owner." *Accord United States v. One Parcel of Land*, 614 F.Supp. 183 (N.D.Ill.1985).

Having found that Weinberg is not an "innocent owner" under the statute, the court will consider whether the money for attorney fees is otherwise exempt from forfeiture. The court will first examine the statute. If the statute does not exempt attorney fees, then the court must reach the constitutional issue raised by claimants; that is, whether the Sixth Amendment requires such an exemption of defense attorney fees.

## IV.

Sections 881 and 853 do not expressly discuss an attorney fees exemption. However, a number of cases have held that section 853 and its counterpart under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1963, do exempt bona fide transactions for attorney fees. *See e.g., United States v. Bassett*, 632 F.Supp. 1308 (D.Md.1986), *aff'd on other grounds, United States v. Harvey*, 814 F.2d 905 (4th Cir.1987); *United States v. Reckmeyer*, 631 F.Supp. 1191 (E.D.Va.1986), *aff'd on other grounds, United States v. Harvey*, 814 F.2d 905 (4th Cir. 1987); *United States v. Ianniello*, 644 F.Supp. 452 (S.D.N.Y.1985); *United States v. Rogers*, 602 F.Supp. 1332 (D.Colo.1985). These cases found that those criminal forfeiture statutes were ambiguous, since the statutes did not specifically discuss attorney fees. The courts went on to look at the legislative history, and found that the history demonstrated an intent to exclude attorney fees from forfeitures.

Other cases have held that section 853 is not ambiguous. *United States v. Harvey*, 814 F.2d 905, 913–18 (4th Cir.1987); *United States v. Nichols*, 654 F.Supp. 1541, 1554–56 (D.Utah 1987). That is, that the language of the section requires the forfeiture of all property, even in a bona fide attorney fees transaction, unless the transferee has no knowledge of the reasonable probability of forfeiture. After studying the statute, this court agrees with *Harvey* and *Nichols*, and concludes that the statute on its face does not exempt attorney fees.

In addition, this court does not believe that the legislative history of the statute shows any congressional intent to exempt attorney fees from forfeiture. The legislative history reveals that Congress did not state whether it intended to either forfeit or exempt attorney fees under the forfeiture statutes. The 1984 congressional enactments on forfeiture were clearly meant to strengthen the forfeiture laws, in order to deprive drug traffickers of their illegal property. S.Rep. No. 255, 98th Cong., 2d Sess. 191, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3374. In so doing, Congress (1) amended 18 U.S.C. § 1963, (2) enacted the criminal forfeiture statute in section 853, and (3) strengthened

the civil forfeiture provisions of section 881. But Congress did not state its intent as to whether the forfeitures should include defense attorney fees. The only mention of the subject is the following:

> Nothing in this section [21 U.S.C. § 853] is intended to interfere with a person's Sixth Amendment right to counsel. The Committee, therefore, does not resolve the conflict in the District Court opinions on the use of restraining orders that impinge on a person's right to retain counsel in a criminal case.

H.R.Rep. No. 845, Pt. 1, 98th Cong., 2d Sess. 19 n. 1 (1984); see Joint Explanatory Statement of Titles II and III, 124 Congressional Record § 17647, *reprinted in* 1978 U.S. Code Cong. & Admin.News, 9518, 9522–23. Congress thus appears to have declined to resolve the issue of whether attorney fees are exempt from forfeiture under section 853.

The court believes that the same conclusions are as applicable to section 881 as they are to section 853. Neither the statutory language nor the legislative history demonstrate that attorney fees are exempted from the forfeiture requirements of section 881. *Accord USA v. Henderson,* No. CR–87–0398 (N.D.Cal. Aug. 25, 1987) (order); *USA v. Hoyt,* No. CR–87–20013 (N.D. of Cal. Mar. 13, 1987) (memorandum of magistrate).

The court must therefore address the constitutional issue raised by the claimants in support of their claimed exemption of attorney fees from forfeiture.

## V.

The parties do not dispute that if the motion to exempt attorney fees is denied, Mobley's retained counsel will not represent him. In that event, Mobley will be represented by counsel appointed under state law. Thus, the present issue is not the right to be represented by *an* attorney; if the motion is denied, Mobley will still have representation. Nor does Mobley claim that appointed counsel would be ineffective; such a claim would be premature. The issue before this court is the qualified right to counsel of choice.[5]

### A.

■ The qualified right to counsel of choice was recognized by the U.S. Supreme Court in *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932). The importance of this qualified right is exemplified by the Ninth Circuit's statement in *United States v. Ray,* 731 F.2d 1361, 1365 (9th Cir.1984), that denial of the qualified right to counsel is reversible error, regardless of whether prejudice is shown.[6]

However, the right is a qualified one, and it requires balancing the interests of the defendant with the interests of the United States.

> While the right to assistance of counsel encompasses a right to counsel of choice, that right of choice is not absolute.... A defendant may not use this right to interfere with, manipulate, or unreasonably delay the fair, prompt and efficient administration of justice.

*United States v. Thier,* 801 F.2d 1463, 1471 (5th Cir.1986)

Courts must engage in a careful balancing of the defendant's right to counsel of choice against the government's interests that are identified by the statutes. *See Linton v. Perini,* 656 F.2d 207, 211 (6th Cir.1981) (balancing trial judge's discretionary power to deny continuances against Sixth Amendment right to counsel of choice), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982); *United*

---

5. The court notes that this case is in an unusual procedural posture. There are no reported cases in which the criminal charges were pending in state court while the forfeiture action is in federal court. However, the effect on the defendant/claimant is the same. Without access to the money that is the subject of the seizure, defendant will not be able to hire his counsel of choice.

6. However, in the facts before it the *Ray* court found no error, because while defendant's assets were restrained under section 853, and thus unavailable for his defense, defendant indicated that he wanted appointed counsel to represent him.

States v. Burton, 584 F.2d 485, 489 (D.C. Cir.1978), cert. denied 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979); Gandy v. Alabama, 569 F.2d 1318, 1323 (5th Cir. 1978) (proper exercise of court's discretion requires a delicate balance between the defendant's due process right to adequate representation by counsel of his choice and the general interest in the prompt and efficient administration of justice); see also United States v. Washington, 797 F.2d 1461 (9th Cir.1986) (government "bears a heavy burden of establishing concerns about integrity of judicial process to justify disqualification of counsel"); United States v. James, 708 F.2d 40, 45 (2d Cir. 1983) (weighing right to counsel against interests of government, witness, and public); United States v. Phillips, 699 F.2d 798, 802–03 (6th Cir.1983), overruled on other grounds, United States v. Tosh, 733 F.2d 422 (6th Cir.1984); United States v. Cunningham, 672 F.2d 1064 (2d Cir.1982).

The government here argues that only an arbitrary denial of counsel of choice is unconstitutional, citing Ford v. Israel, 701 F.2d 689 (7th Cir.), cert. denied, 464 U.S. 832, 104 S.Ct. 114, 78 L.Ed.2d 114 (1983); Gandy v. Alabama, 569 F.2d 1318 (5th Cir.1978), and United States v. Dinitz, 538 F.2d 1214 (5th Cir.1976), cert. denied, 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977). However, these cases do not support the standard of arbitrariness that the government advocates, for two reasons.

First, those cases did not involve a situation in which the government sought to deprive a defendant of the ability to retain any counsel at all; each case dealt with the denial of the services of a particular attorney. In Gandy the trial court had denied a continuance for a period during which defendant's counsel would be unavailable, 569 F.2d at 1320; in Dinitz the court refused to reinstate an out-of-state attorney pro hac vice after ordering the attorney's removal from the case for misconduct, 538 F.2d at 1217–18; and in Ford the court held simply that a defendant who could afford to retain counsel did not have the right to retain an out-of-state lawyer without complying with Wisconsin's local-counsel rule. 701 F.2d at 692–93.

Second, in those cases cited by the government the courts applied a balancing test to weigh the interests of the defendant against the concerns of the judicial process. For example, in Ford the court noted that the defendant's interest in avoiding the local-counsel rule was simply an interest in obtaining the services of a particular out-of-state attorney, while the rule promoted the state's interest in reducing complaints of ineffective assistance of counsel after criminal trials. 701 F.2d at 692–93. The court in Gandy was even more explicit about its adoption of this balancing approach. 569 F.2d at 1323 ("a delicate balance between the defendant's due process right to adequate representation by counsel of his choice and the general interest in the prompt and efficient administration of justice"). In addition, while the Dinitz court applied an abuse of discretion standard on appeal, the exhaustive analysis of that court demonstrates the high degree of scrutiny given to rulings which affect the right to counsel of choice.

If this motion for exemption were denied, Mobley would lose the ability to retain any private counsel. Therefore, the court finds it particularly important to balance the conflicting interests.

### B.

As stated, Congress amended the criminal and civil statutes in 1984 in order to enhance the use of forfeiture proceedings. Three governmental interests can be identified from those enactments: 1) to deter offenders; 2) to deprive drug dealers of their illegal property; and 3) to provide funds to offset government expenses and add to the general Treasury. S.Rep. No. 225, 98th Cong. 1st Sess. 191, 194, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3374, 3377.

This court concludes that excluding attorney fees from forfeiture would not substantially defeat these goals. Depriving a defendant of his ability to obtain private counsel might be a deterrence to crime, but that type of deterrence runs contrary to the defendant's rights under the Sixth

Amendment. The exemption of attorney fees does not allow defendants to keep their illegal property. Defendants must pay the bona fide attorney fees, which can be monitored by the court to prevent unreasonable fees or sham transactions. Finally, the loss to the government treasury of reasonable attorney fees is not great. And since the defendant retains his own counsel, the government avoids the expense of paying for appointed counsel. *See generally Harvey*, 814 F.2d at 924–25; *Thier*, 801 F.2d at 1474; *Nichols*, 654 F.Supp. at 1559.

Forfeiting funds that would be used for attorney fees would force an otherwise financially able defendant to accept appointed counsel. The defendant is not merely deprived of an individual, lawyer but rather of his ability to retain any private counsel. The court also notes that forfeiture is discretionary, and could be used by the government to discourage employment of vigorous and specialized defense counsel. *Thier*, 801 F.2d at 1476 (Rubin, J., concurring). In effect, the prosecution could have a role in selecting, influencing, or vetoing the defendant's choice of counsel. *See* Genego, *Prosecutorial Control over a Defendant's Choice of Counsel*, 27 Santa Clara L.Rev. 17, 23 (1987). An accused defendant is presumed innocent. The state has not yet proved that he is guilty of any crime. Nor has the United States established the forfeitability of the seized money. Yet, defendant would no longer have the right to use his assets to pay for counsel.

### C.

■ Some courts have reached the constitutional issue presented here, and have agreed that the interests of a defendant in retained counsel outweigh the government's interest in obtaining forfeitable property.

In *United States v. Harvey*, 814 F.2d 905 (4th Cir.1987), the court addressed the application of section 853 to attorney fees in three different procedural postures. After concluding that the statute includes attorney fees among forfeitable property, the

court reached the constitutional issue. The court noted that the right to counsel of choice is qualified by a defendant's resources and by certain countervailing interests in the orderly administration of justice. *Id.* at 923. The court also considered the countervailing interests of the government as demonstrated by the statute. *Id.* at 924. The court concluded that to the extent that the statute deprives an accused of the ability to pay legitimate attorney fees to defend the underlying criminal charges, the application of the statute is unconstitutional. *Id.* at 926. The government advises that a rehearing has been granted in *Harvey*. Thus, the government questions the authority of the case. This court cannot anticipate the outcome of the rehearing, and believes that the logic of the present opinion is persuasive.

The conclusion reached by the *Harvey* court is also supported by the exhaustive and scholarly opinion issued just prior to *Harvey* in *United States v. Nichols*, 654 F.Supp. 1541 (D.Utah 1987). That court extensively reviewed both the case law and legislative history of section 853. It concluded that section 853 could not constitutionally deprive a defendant of the right to his property to pay attorney fees. *Id.* at 1559. Additionally, the court discussed the same issue under section 881, and concluded that forfeitures under that statute must also exclude bona fide attorney fees when the defendant has no other resources. *Id.* at 1561.

This court concludes that the right of a criminal defendant to counsel of his choice substantially outweighs any governmental interest in retaining reasonable attorney fees. The court holds that when a defendant demonstrates that he has no other source of funds to retain private counsel, money held subject to forfeiture under section 881 must be made available to pay reasonable bona fide attorney fees for the defense of his criminal actions.[7]

### VI.

■ Having concluded that claimants are entitled to exclude attorney fees in

---

7. The court notes that this conclusion is in accord with other decisions in this district. *United States v. Henderson, supra; United States v.*

*Hoyt, supra; United States v. Pemberton*, CR 86–0689 (N.D.Cal. Jan. 9, 1987) (oral order under criminal forfeiture statute); *United States v.*

order to defend the criminal charges, the court is left to determine whether the assignment of $50,000 is reasonable.

Mobley is now charged with three felony counts and faces up to five years incarceration on each count. Weinberg has submitted a declaration which explains the nature of the charges and the scope of the defense. Counsel has already made twelve court appearances and filed three motions. Counsel anticipates filing a pretrial writ and another substantial motion. All of this has occurred prior to the preliminary hearing, which may take two to three days. If the case goes to trial, counsel anticipates the trial taking several weeks.

*Vivenzi,* CR 85–2160 (N.D.Cal., June 6, 1986) (order).

Based upon the number of charges, the apparent complexity of the case, and the experience of counsel, the court finds that the claimed attorney fees are reasonable.

The court therefore grants claimants motion to exclude $50,000 from this forfeiture action.

IT IS SO ORDERED.