**UNITED STATES of America, Plaintiff,**

v.

**ONE RESIDENTIAL PROPERTY LOCATED AT 501 RIMINI ROAD, DEL MAR, CALIFORNIA, and Appurtenances Affixed Thereto, Defendants.**

**Civ. No. 89–1011–R(CM).**

United States District Court, S.D. California.

Jan. 18, 1990.

Gloria Sutton Clark, Asst. U.S. Atty., San Diego, Cal., for plaintiff.

Sebastian D'Amico, San Diego, Cal., and Donald Green, Goodman, Stein & Chesnoff, Las Vegas, Nev., for defendants.

## MEMORANDUM DECISION AND ORDER

RHOADES, District Judge.

Claimants Eduardo M. Otero and Elizabeth R. Otero bring this motion to exclude from civil forfeiture a sum of money as attorney's fees from proceeds of a court controlled sale of seized property. The property at issue, the claimants' house, was seized by federal authorities under 21 U.S.C. § 881. Claimants seek an order excluding $250,000.00 from the sale of the property so that their son may retain counsel of choice in a related criminal case.[1]

---

1. The Government argues that claimants lack *jus tertii* standing to advance their son's Sixth Amendment rights. While this is a close question, this court concludes that the claimants have the requisite standing. Claimants are seeking to redress the injury of not being able to afford their son counsel of choice because their home has been seized based on allegations of the son's criminal activity. This is an adequate injury-in-fact to meet the constitutional minimum of Article III standing. While third-party standing is generally not recognized by the courts, three factors may counsel for review: the relationship of the litigant to the person whose rights are being asserted; the ability of the person to advance his own rights; and the impact of the litigation on third-party interests. *Caplin & Drysdale v. U.S.,* — U.S. ——, 109

They contend that the Sixth Amendment of the U.S. Constitution mandates the exclusion of funds to pay reasonable attorney fees.

The motion for exclusion was heard by this court on January 16, 1990. After considering the moving and opposing papers, oral arguments, and the applicable law, this court denied claimants' motion in a brief order. This opinion is to explain the court's reasoning.

### I.

On or about April 20, 1989, the November, 1987 Grand Jury for the United States District Court for the Southern District of California handed down a three count indictment charging claimants' son, Edward Randolph Otero, with violations of 21 U.S.C. §§ 952, 960, and 963, conspiracy to import marijuana; 21 U.S.C. §§ 841(a)(1) and 846, conspiracy to possess marijuana with intent to distribute; and 18 U.S.C. § 924(c), use and carrying a firearm during a drug trafficking crime. The indictment alleges that the son performed one or more overt acts at his parents' home at 501 Rimini Road, Del Mar, California.

On July 10, 1989, the Government filed a civil complaint for forfeiture against the defendant property, and alleged that the property was used to facilitate the importation of marijuana. The house has an estimated worth of $900,000.00. Claimants' son contends that he has no other source of funds to retain his counsel of choice other than funds whose source would be the proceeds of the sale of claimants' residence.

### II.

The Supreme Court has already decided that the forfeiture of illicit proceeds or other assets utilized to facilitate criminal activity which would otherwise be used to pay attorney fees does not violate a criminal defendant's Sixth Amendment qualified right to counsel of choice. *Caplin & Drysdale v. United States,* —— U.S. ——, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989); *United States v. Monsanto,* —— U.S. ——, 109

S.Ct. 2657, 105 L.Ed.2d 512 (1989). However, these cases were decided under the criminal forfeiture statute, 21 U.S.C. § 853, while the present case involves a seizure under the civil forfeiture statute, 21 U.S.C. § 881.

Claimants contend that the Supreme Court's opinions in *Caplin & Drysdale* and *Monsanto* should not be applied to the present case because the Court only addressed a defendant's right to counsel of choice in the context of criminal forfeiture statutes. Claimants instead direct this court's attention to *United States v. $70,-476.00 in U.S. Currency,* which holds that attorney's fees may be exempt from assets seized under the civil forfeiture law. 677 F.Supp. 639 (N.D.Cal.1987). While claimants assert that a critical distinction must be made between a civil and a criminal forfeiture proceeding, they offer little support for their contention that the distinction is relevant to the issue of whether seized assets may be used for attorney's fees.

### III.

In determining the scope of a statute, a court must first look to its language. *Monsanto,* 109 S.Ct. at 2662, *quoting United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). In *Monsanto,* the Court found that the language of § 853, the criminal forfeiture statute, is "plain and unambiguous: all assets falling within its scope are to be forfeited upon conviction, with no exception existing for the assets used to pay attorney's fees—or anything else for that matter." 109 S.Ct. at 2662. In reaching this conclusion, the Court specifically noted that the statute provides that a person convicted of the offenses charged in the indictment "shall forfeit ... any property" that was derived from the commission of these offenses. *Id.* The Court added that "property" was broadly defined by the statute. *Id.*

Similarly, the language of § 881, the civil forfeiture statute, is plain and unambig-

S.Ct. 2646, 2651 n. 3, 105 L.Ed.2d 528 (1989). Here, the first two factors weigh heavily in

claimant's favor. Thus, claimants satisfy the requirements for *jus tertii* standing.

uous. The statute provides that all assets falling within its scope "shall be subject to forfeiture to the United States and no property right shall exist in them." 21 U.S.C. § 881(a). Further, property is given a broad definition in the statute. 21 U.S.C. § 881(a)(1)-(7). Thus, this court concludes the 21 U.S.C. § 881 is unambiguous in failing to exclude assets that could be used to pay an attorney from its definition of forfeitable assets. Moreover, nothing in the legislative history of the statute suggests a legislative intent to exclude attorney's fees from forfeitable assets. *See $70,476.00 in U.S. Currency,* 677 F.Supp. at 644.

Having concluded that there is no exemption from § 881's forfeiture provisions for assets which a defendant seeks to use to retain an attorney, this court must reach the question whether this provision violates the defendant's right to counsel of choice as protected by the Sixth Amendment or the Due Process Clause of the Fifth Amendment.

### IV.

In *Caplin & Drysdale,* a narcotics defendant's counsel challenged the validity of the criminal forfeiture statute to the extent that it prevented defendant from paying attorney's fees. 109 S.Ct. 2646. The Court first addressed petitioner's Sixth Amendment argument and found that the statute did not impermissibly burden a defendant's right to retain counsel of choice. *Id.* at 2656. "A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney even if those funds are the only way that the defendant will be able to retain the attorney of his choice." *Id.* at 2652. The Court explained that the statute reflects the principle of vesting title to any forfeitable assets in the hands of the Government at the time of the criminal act giving rise to forfeiture. *Id.* at 2653. The Court also rejected petitioner's "balancing analysis" where petitioner asserted the Government had only a modest interest in forfeitable assets that may be used to retain an attorney. *Id.* at 2654.

Further, the Court found that three governmental interests overrode any Sixth Amendment interest in permitting criminal defendants to use assets adjudged forfeitable to pay for their defense. *Id.* at 2655. First, "the Government has a pecuniary interest in forfeiture that goes beyond merely separating a criminal from his ill-gotten gains; that legitimate interest extends to recovering *all* forfeitable assets, for such assets are deposited in a Fund that supports law-enforcement efforts in a variety of important and useful ways." *Id.* at 2654. Second, the Government has an interest in securing forfeitable assets in order to return them to those wrongfully deprived or defrauded of them. *Id.* Finally, the Court found that a major purpose of the recent alterations to the forfeiture laws was to weaken the economic power of organized crime and drug enterprises. *Id.* The Court concluded that "[t]his includes the use of such economic power to retain private counsel." *Id.* at 2655.

The Court next addressed petitioner's challenge to the statute based on the Due Process Clause of the Fifth Amendment. *Id.* at 2656. While recognizing the potential for abuse, the Court stated that "due process claims alleging ... abuses are cognizable only in specific cases of prosecutorial misconduct ... or when directed to a rule that is inherently unconstitutional." *Id.* at 2657. "The Constitution does not forbid the imposition of an otherwise permissible criminal sanction, such as forfeiture, merely because in some cases prosecutors may abuse the processes available to them, *e.g.,* by attempting to impose them on persons who should not be subjected to that punishment." *Id.*

In *Monsanto,* the Court addressed the question of whether the criminal forfeiture statute authorized a court to enter a pretrial order freezing assets in a defendant's possession, even where the defendant seeks to use those assets to pay an attorney, and if so, whether the order is permissible under the Constitution. 109 S.Ct. at 2659. In holding that the statute was constitutional, the Court relied on its conclusion in *Caplin & Drysdale. Id.* at 2666.

The defendant in *Monsanto* also argued that freezing the assets before he was convicted—and before they are finally adjudged to be forfeitable—raised distinct constitutional questions. *Id.* The Court rejected this argument and found that the assets may be frozen before conviction based on a finding of probable cause to believe the assets are forfeitable. *Id.*

## V.

Claimants urge this court not to adopt the constitutional analysis applied in *Caplin & Drysdale* and *Monsanto*. However, this court is not persuaded that the civil nature of this forfeiture proceeding changes the nature of the constitutional question.

First, claimants contend that the different burdens of proof in civil and criminal forfeiture cases distinguishes the present case from *Caplin & Drysdale* and *Monsanto*. In a civil forfeiture case, the United States must establish probable cause to believe that a substantial connection exists between the property to be forfeited and the illegal exchange of a controlled substance. *See* 21 U.S.C. § 881(d); 19 U.S.C. § 1615. Probable cause means reasonable grounds for belief of guilt, supported by less than *prima facie* proof but more than mere suspicion. *United States v. $93,-685.61 in U.S. Currency*, 730 F.2d 571, 572 (9th Cir.1984). If the government succeeds in showing probable cause to institute forfeiture, the burden shifts to the claimant to prove by a preponderance of the evidence that the item is not subject to seizure. *Id.*

Pursuant to 21 U.S.C. § 853, the criminal forfeiture statute, a temporary restraining order may be entered if the United States demonstrates that there is probable cause to believe that the property is subject to forfeiture. The Government may secure a protective order in one of two ways. First,

such an order may issue upon the filing of an indictment or information charging a violation of Subchapter I of Chapter 13. Alternatively, an order may issue if the court determines, after an opportunity for a hearing, that there is a substantial probability that the Government will prevail on the issue of forfeiture and that failure to enter the order will result in the property being made unavailable for forfeiture and that the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered. 21 U.S.C. § 853(e)(1). At trial, there is a rebuttable presumption that the property of a person convicted under the chapter is subject to forfeiture if the United States proves that the property is subject to forfeiture by a preponderance of the evidence. 21 U.S.C. § 853(d).

Thus, neither statute allows the seizure of assets absent a minimum finding of probable cause. The Supreme Court has made it clear that assets in a criminal defendant's possession may be restricted based on a finding of probable cause to believe that the property will ultimately be proven forfeitable. *Monsanto*, 109 S.Ct. at 2666. This court is not persuaded by claimants' argument that the respective burdens of proof alter the constitutional analysis in the present matter.

Second, the case relied on by claimants to distinguish the present matter from criminal forfeiture cases explicitly states that the opinion "include[s] discussion of section 853, since it is similar to section 881 and much of the relevant case law has developed under section 853." *$70,476.00 in U.S. Currency*, 677 F.Supp. at 642. Further, the continuing validity of that case is highly suspect.[2]

**2.** As the Northern District treated civil and criminal forfeiture provisions interchangeably, its conclusion that defendants are entitled to exclude attorneys fees from forfeitable property in criminal cases has been overruled by the recent Supreme Court decisions and its position in civil cases has been severely undermined. For example, the Northern District found that excluding attorney's fees from forfeiture would not substantially defeat the three governmental interests identified from the 1984 amendments: 1) to deter offenders; 2) to deprive drug dealers of their illegal property; and 3) to provide funds to offset government expenses and add to the general Treasury. 677 F.Supp. at 645. The Supreme Court addressed the same three goals and came to the opposite conclusion. *Caplin & Drysdale*, 109 S.Ct. at 2655.

Third, claimants' assertion that a sentence in the *Monsanto* decision explicitly limits the decision to criminal forfeiture cases is incorrect. In explaining its grant of certiorari, the Court states that there is a conflict among the Courts of Appeals over the statutory and constitutional questions presented and cites several cases in the footnote. 109 S.Ct. 2661 n. 6. Claimants contend that each of the cases cited in the footnote concerns only the criminal forfeiture proceedings under 21 U.S.C. § 853. While *United States v. Moya–Gomez*, 860 F.2d 706 (7th Cir.1988), addressed only criminal forfeitures, two other cases were not so limited in their reach. In *United States v. Nichols*, the Tenth Circuit expressly stated that "[t]his holding applies equally to criminal and civil forfeiture." 841 F.2d 1485, 1509 (1988). In addition, *United States v. Jones* involved the Racketeering Influenced and Corrupt Organizations Act ("RICO") forfeiture statute, 18 U.S.C. § 1963. 837 F.2d 1332, *reh'g granted*, 844 F.2d 215 (5th Cir.1988). Thus, this footnote provides additional support for this court's conclusion that the decision and rationale in *Caplin & Drysdale* and *Monsanto* are transferable to cases such as the present one involving seizures under the civil forfeiture laws.

This court recognizes that civil and criminal forfeiture proceedings are not themselves interchangeable. A civil forfeiture proceeding is an *in rem* action against the property that the government seeks to obtain. The guilt or innocence of the property owner is irrelevant in a civil action because the theory is that the property itself has committed the wrong. *See generally Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680–86, 94 S.Ct. 2080, 2090–93, 40 L.Ed.2d 452 (1974). Moreover, because the property is considered tainted upon commission of the wrongful act, the interest of the government vests at the time of the act.

Conversely, criminal forfeiture is *in personam.* It operates against a convicted criminal defendant. Before Congress amended the criminal forfeiture provisions in 1984, property did not vest with the United States upon commission of the wrongful act. By amendment, Congress included a "relation back" provision, which "essentially borrows the concept of taint from civil forfeiture." *Nichols*, 841 F.2d at 1489. "Thus, the government's interest in the property to be forfeited vests at the time the crime is committed, rather than upon conviction, as had previously been the case...." *Id.*

Therefore, the differences between civil and criminal forfeiture proceedings do not suggest that the *Caplin & Drysdale* and *Monsanto* decisions are not applicable to civil forfeiture cases. In fact, because property subject to civil forfeiture has always been considered to be tainted upon commission of the wrongful act, thereby immediately vesting the government's interest, an even stronger argument can be made that "[a] defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that defendant will be able to retain the attorney of his choice." *Caplin & Drysdale*, 109 S.Ct. at 2652.

### VI.

This court holds that neither of the Fifth or the Sixth Amendments to the Constitution requires Congress to permit a criminal defendant to use assets adjudged to be civilly forfeitable to pay defendant's legal fees. This court relies on the conclusions in the cases of *Caplin & Drysdale v. United States* and *United States v. Monsanto* in reaching this result.

Claimants' motion to exclude from the civil forfeiture a sum of money as attorney's fees is DENIED.

IT IS SO ORDERED.