NO. 07-00-0098-CR

NO. 07-00-0099-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JULY 5, 2001

______________________________

LUIS VELA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 47
TH
 DISTRICT COURT OF RANDALL COUNTY;

NOS. 12,614-A AND 12,615-A; HONORABLE DAVID L. GLEASON, JUDGE

_______________________________

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

In these companion cases, appellant Luis Vela challenges his convictions of aggravated sexual assault, enhanced by the convictions of two previous felonies.  In each case, he was sentenced to life imprisonment in the Institutional Division of the Department of Criminal Justice, with the sentence in cause number 07-00-0099-CR to be served after the sentence in cause number 07-00-0098-CR “has ceased to operate.”  In mounting his challenge, appellant raises 33 issues for our review.  Disagreeing that reversal is required, we affirm the judgments of the trial court.

Because appellant raises both factual and legal sufficiency questions, a rather detailed discussion of the evidence is necessary.  The record reveals that Rena Kay Box, a long-time acquaintance of the mother of T.C., a child under 14 years of age, suspected that the child was being molested by appellant.  Because of her suspicions, on June 27, 1999, Box and her daughter, Summer Dalton, took T.C. to a McDonald’s fast food restaurant.  At McDonald’s, Dalton asked T.C. if appellant “was hurting her in any way.”  T.C. told her that appellant hurts her when he “sticks” his penis in her vagina and that he also makes her put his penis “in her mouth until white stuff comes out.”  After the McDonald’s visit, T.C. went to Box’s home, where she reiterated that appellant was having sex with T.C.  Because of these conversations, Box took T.C. to the hospital.  At the hospital, Box met with law enforcement and Children’s Protective Services personnel.  The next day, Box took T.C. to The Bridge, a children’s advocacy center, where the child was interviewed by April Leming.  During the interview with Leming, T.C. again recounted appellant’s sexual activities with her.

Subsequently, Box returned T.C. to Northwest Texas Hospital for a sexual abuse examination.  The examination was conducted by Becky O’Neal, a sexual assault nurse examiner.  During the course of the examination, the child again recited the sexual activities which appellant had performed on and with her.  O’Neal averred that her examination showed that T.C.’s hymen was damaged by the repeated penile penetration of the child’s vagina.  Later, T.C. had about 20 therapy sessions with Dr. Pam Kirby, a clinical psychologist and, according to Kirby, she again recited the sexual occasions with appellant.  Kirby testified that, based upon the information she obtained during the sessions, T.C.’s “symptoms seem[ed] consistent with a child who has been sexually abused.”  At trial, T.C. also testified in some detail about the sexual activities appellant made her perform.

In his first three issues, appellant challenges an alleged “advisory opinion” given by the trial court.  In essence, he argues the trial court gave an impermissible advisory opinion with regard to whether Dr. Kirby, an expert witness, could testify and, if so, which matters she could testify about.  Initially, we note that appellant’s trial objection was that the expert’s opinion regarding conversations she had with the child would constitute hearsay and, moreover, would inevitably bring on a discussion about extraneous offenses which the expert might have become familiar with in the course of her practice.  This objection differs from the complaint which is now made.  The rule is well-settled that an appeal complaint must comport with a trial objection in order to preserve error for appellate review.  
See Butler v. State
, 872 S.W.2d 227, 237 (Tex.Crim.App. 1994), 
cert. denied
, 513 U.S. 1157, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995); 
Rezac v. State
, 782 S.W.2d 869, 870 (Tex.Crim.App. 1990). 

Additionally, even assuming arguendo the question was properly preserved, it is without merit.  The record reveals the trial judge expressly commented he was not giving an advisory opinion and a review of his comments reveals that they were within the permissible range of his role as arbiter and supervisor of the introduction of permissible evidence.  Appellant’s first three issues are overruled.

In issues four through seven, appellant challenges the trial court denial of his request for new counsel on the day of trial. To properly discuss and understand that argument, it is necessary to set out the relevant colloquy:

The Court:  . . . Mr. Vela, you expressed a desire to speak to me?

Defendant:  Yes sir.  I mean, with all due respect, Your Honor, I mean, I just wanted to – me and my attorney, I mean, I’ve been incarcerated seven and a half months, sir, and all I’m asking is – all I’m asking with all due respect, sir, is that I have appropriate counsel.  I’ve talked to him for 15 minutes in the last seven and a half months.  And like I said, I talked to him yesterday.

He’s been there before, one time.  He was there five minutes.  He told me what I was facing, and then he came Friday and told me I’m going to trial on Monday, which is today, sir.  He’d be back Saturday to discuss our – you know, situation.  And he didn’t  – he didn’t go Saturday, so he ended up going over there yesterday, the day prior to trial.  And like I said, I just – you know, with all due respect to the Court, and everything, all I am asking is for a fair trial, sir.  I feel that I have not received, you know, fair counsel, man.

I haven’t – all the leads and all the information that I gave him today, there was no possible way for him to follow through with any of that information on a Sunday, you know, and me coming to court on a Monday.  And like I said, with all due respect, I mean, all I’m asking is for a fair trial. Sir, I’m a repeat offender, like I said.  And this is my life that I’m facing.

Like I said, I’m not trying to disrespect anybody in any way.  And Mr. Clark, I apologize.  I don’t want to–you know, it’s just – all I’m asking is for a fair trial, man.  And I just don’t feel that this is – I mean --

The Court:  Okay. I hear what your complaint is.  Mr. Clark, do you – have you seen Mr. Vela before last week?

Defense Counsel (Mr. Clark):  Yes, Your Honor.

The Court:  Okay.

Mr. Clark:  And let me interject one thing.  Every time I’ve talked to Mr. Vela – and I have talked to him on the phone also.  I’ve asked him about – 

The Defendant:  That’s a lie, sir.  I’ve never talked to you on the phone.  You had your wife call me that other day to ask me for a phone number.

Mr. Clark:  Well, our office talked to him on the phone. 

The Court:  Okay.

Mr. Clark:  I have asked him about witnesses from day one.  And I was told there were no witnesses until yesterday.  The subpoenas have gone out.  The witnesses should be available.  As best I know, they’re in town.  And we should be able to have them here.

The Court:  All right.  Have you had time to conduct your own independent investigation, examine the D.A.’s files, those kind of things to prepare for trial?

Mr. Clark:  Yes. Your Honor, I have, as the Court might see here, a trial notebook that we’ve put together that has all the pleadings, all the statements, all the motions, all of my notes uh – subpoena lists.  There are a couple of little house cleaning deals this morning that we need to take care of.  But other than that, I have – I do feel like the proper motions and preparation has been made.

The Court:  All right.  Mr. Vela, I am uh – I don’t guess I can ever relieve your apprehension about such things, but I have known Mr. Clark for several years. And in all of my past dealings with him, I have found him to be competent, prepared and able.

The Defendant:  Judge, there’s been a conflict of interest between us.  I mean, we’ve had a – not a very good discussion yesterday as to – and I’ll be honest with you.  I’ve told him, you know – I mean I was trying to do the right thing.  I told him what my intentions were.  And it wasn’t in any way – I mean, I’ve been incarcerated almost eight months now, you know.  And like I said – you know, I wouldn’t – I was locked up for six months, sir, before I even knew who he was.  And there was, never any discussion about who or anything like that.  He told me you’re facing . . . life, and that’s it.

He was gone within five minutes.  And Friday was the second time that I’ve seen him, this past Friday.  And he showed up this Sunday.  And we discussed that.  So there was no indication of – whatsoever – when his wife called me Friday, he showed up Friday–Friday evening, Saturday afternoon, you know.  This is the truth.  She called me.  They told me you have to call your attorney.

I called his wife.  She told me, all I need to know is a phone number.  A phone number – that means I gave it to him, which was one of my employer’s phone numbers, you know, to verify.  He says, well, can I talk to somebody that maybe you know?  And, uh – that phone number was given to him two months prior to that.  And like I said, it was just – she called back to get the number and see if they were listed [in] the phone book.  Because like I said, I don’t have any reason to lie or anything.  Like I said, all I’m asking is for a fair trial, man.  I just don’t think he is – I apologize, man.

I know – I mean, I’ve heard a lot of good stuff from him and all that.  I was pretty excited when I got him because everyone was saying man – but sir, he hasn’t, you know – 15 minutes, and we discussed my case yesterday, sir, I mean, and I’m going to court today.  I mean, I’m not a rocket scientist and --

Mr. Clark:  Again, Your Honor –

The State:  Can I interject something just for the record?

The Court:  Surely.

The State:  I’ve talked to Jim Clark on numerous occasions about the case.  I know he has reviewed our file at least twice and made copies of our file and everything, I’m assuming everything we had in it, because that’s our open-file policy.  We make it available to defense counsel.  And I just want that to be on the record that – and this was started back in November when we were originally set for trial in December.

The Court:  Yes, sir.

The State:  Is when he first started reviewing the file. And he’s made copies of the videotapes of the alleged victims in the case.  And he has had those for at least two months, I believe.  I think it was the beginning or end of December, beginning of January, about a month and a half to two months.  And I just wanted to state that on record.

Mr. Clark:  Well, we have had those tapes, Your Honor, and statements of witnesses for some time, over two months – again, I want to stress to the Court that I – when I talked to Mr. Vela, we talked about what was happening in his case.  And I asked him – I said, about witnesses to this.

He told me up until just very recently that there were no witnesses. So when he did finally tell me that yes, this might be a witness, that might be a witness, we immediately uh –got subpoenas issued.

The Court:  Okay.

Mr. Clark:  And I do believe that these subpoenas will be served and we will have our witnesses here in plenty of time for them to – if they’re going to, to testify.

The Court:  All right.  Mr. Clark, Mr. Uh – Judge Kiser appointed you back in July of last year for this case?

Mr. Clark:  That’s correct.

The Court:  And you have had plenty of time to do you investigation, and you’ve done what you told me you have done, right?

Mr. Clark:  Yes. I’ve done that investigation over a period of a couple of months, Your Honor.

The Court:  Okay. All right. Well, Mr. Vela, the situation is that Mr. Clark is your lawyer.  These cases are scheduled – two of these cases are scheduled for trial together.  They have been consolidated for trial, and we’re going to start that in just a little while.

I know you’ve been through the system before.  You’ve had previous courtroom experience and previous lawyers, but I don’t know whether you feel comfortable representing yourself or not.  What–I’m not suggesting it at all. I think you’re better off with Mr. Clark representing you, but if you --

The Defendant: I just think that --

The Court:  But if you are not satisfied with his services and you want to represent yourself, I’ll permit you to do that.  I just don’t think it’s wise.

*      *     *

The Court:  Well, I’ll overrule your objection,(to replace counsel) Mr. Vela.  We’ll begin trial shortly.  I’ll need to go swear the panel and make sure they’re available.

The general rule is that an accused’s right to select his own counsel cannot be insisted upon or manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.  
Estrada v. State
, 406 S.W.2d 448, 449 (Tex.Crim.App. 1966).  
See also Brown v. State
, 464 S.W.2d 134, 135 (Tex.Crim.App. 1971).  Indeed, a general corollary of that rule is that where, as here, the trial court has no notice of an accused’s alleged dissatisfaction with the services of a trial counsel until the day of trial, no error is presented by the trial court’s refusal to appoint new counsel. 
 See DeGroot v. State
, 24 S.W.3d 456, 460 (Tex.App.–Corpus Christi 2000, no pet.);
 Foster v. State
, 817 S.W.2d 390, 392 (Tex.App.–Beaumont 1991, no pet.).

According him the deference to which the trial judge is entitled, we cannot say he abused his discretion.  As we above set out, the trial judge held a rather comprehensive hearing on the matter and made his decision based upon facts represented at that hearing.  We cannot fault him for his decision.  Appellant’s fourth through seventh issues are overruled.

In his eighth through thirteenth issues, appellant challenges the appointment and the trial performance of appellant’s co-counsel.  Prior to the commencement of trial, defense counsel James Clark informed the trial court that attorney John Terry was going to assist him in trying appellant’s case.  Appellant did not object to the inclusion of Terry as co-counsel and the trial court allowed Terry to sit as co-counsel.  In order to preserve a question for appellate review, it is necessary to make a timely and specific objection at trial.  Tex. R. App. P. 33.1.  Appellant’s failure to make a trial objection on the basis now asserted waived his right to complain. 

However, in the interest of justice, we will discuss the question.  As support for his proposition that reversible error has been shown, appellant relies upon 
Gandy v. Alabama
, 569 F.2d 1318 (5
th
 Cir. 1978), and 
Melendez v. Salinas
, 895 S.W.2d 714 (Tex.App.–Corpus Christi 1994, no pet.).

In 
Gandy, 
the retained attorney, on the day of trial, asked the trial court for a continuance because he was involved in a civil trial.  The trial court denied the motion and a partner of retained counsel represented the defendant.  The appellate court held the trial court erred in its action and reversed the case.  
Gandy
, 569 F.2d at 1327.  However, that case is clearly distinguishable from the instant case.  Terry did not replace trial counsel, he merely acted as co-counsel, so appellant actually ended up with two trial attorneys. 
Melendez
 is likewise distinguishable.  In that case, an attorney from the Texas Rural Legal Aid filed an application seeking to replace the appointed attorney on the basis that the first attorney had failed to communicate with the defendant.  However, the trial judge refused to hear the motion and continued the representation of the appointed attorney.  
Melendez
, 895 S.W.2d at 715.  The appellate court held that the motion was of sufficient statute that it should have been heard and the trial court reversibly erred in failing to do so.  
Id.

In this case, appellant’s complaint was even though the trial court allowed Terry’s participation as a co-counsel, his involvement was substantially more than as an assistant to Clark.  Appellant argues that Terry’s substantial involvement in the case warrants reversal because he did so without ever talking to him prior to trial, and concludes that representation was “an arbitrary encroachment of the right to counsel of choice.”  However, again, although appellant voiced his concerns about Clark as set out above, he did not timely express any concerns about Terry.  Regardless of the amount of his actual participation, Clark was present and oversaw the whole trial.  Under this record, Terry’s participation in the trial as a second counsel does not require reversal.  Thus, even if the question was properly before us, reversal would not be required. Appellant’s eighth through thirteenth issues are overruled.

In his fourteenth through eighteenth issues, appellant challenges the trial court’s order “stacking” the second sentence upon the first one.  His complaint is he did not know that if the cases were consolidated, section 3.03 of the Penal Code contained an exception permitting any sentences assessed to be served consecutively rather than concurrently, and if he had known, he would have opposed the State’s motion to consolidate.  However, because of the nature of the cases, even if they had been tried separately, the trial judge would still have had the discretion to require that the sentences be served consecutively.  Tex. Penal Code Ann. § 3.04(b) (Vernon Supp. 2001).  Issues 14 through 19 are overruled.

In issues 20 through 22, appellant challenges the admission of Dr. Kirby’s expert testimony because it did not assist the jury in understanding the evidence or in determining a fact in issue.  In advancing that challenge, appellant posits that “the proponent of novel scientific evidence must prove to the trial court by clear and convincing evidence and outside the presence of the jury, that the proffered evidence is relevant.” 
 See 
Tex. R. Evid. 702.  However, appellant never raised this particular challenge at the pretrial hearing and his objection there was on the basis that it was hearsay and would introduce extraneous offenses.

Again, we note that it is well-established that to preserve an issue for appellate review, a complaint must comport with a trial objection.  
See Butler v. State
, 872 S.W.2d 227, 237 (Tex.Crim.App. 1994), 
cert. denied
, 513 U.S. 1157, 115 S. Ct. 1115, 130 L.Ed.2d 1079 (1995).  Additionally, even if the issue had been preserved, the record is sufficient to show the expert testimony was relevant and admissible.  Appellant’s issues 20 through 22 are overruled.

In issues 23 through 25, appellant questions the trial court’s actions in admitting Dr. Kirby’s opinion that the victim did not lie to her.  Appellant’s specific objection is that such testimony is simply not allowed by the law and that type of evidence is of no assistance to the jury.  The colloquy giving rise to this question is as follows:

Q (the State):  I refer you back, Dr. Kirby, to the questions you were asked about (the victim), her sort of disassociating and looking away, not making eye contact, and whether or not you viewed those as signs and symptoms that someone is lying.  And with that in mind, I want to ask you whether based on your training and experience working with other children, do you believe, having viewed what Mr. Terry asked you about and everything else you viewed, do you believe she was lying?

Defense Counsel:  Objection, Your Honor.  That’s a generalized statement.  Again, it goes past what the Court ruled.

The Court:  I’ll overrule.

The State:  Do you believe she was lying to you when she told you about Luis?

The Witness:  No, sir.

The court’s decision in 
Yount v. State
, 872 S.W.2d 706 (Tex.Crim.App. 1993) is instructive here.  In that case, which involved a prosecution for the aggravated sexual assault of a child, after testifying that she had interviewed and examined “hundreds” of children that had allegedly been sexually abused, the State’s pediatrician expert was allowed to say that she “had seen very few cases where the child was actually not telling the truth.”  
Id
. at 707-08.  In holding that the trial court erred in allowing the answer, the court commented that an “expert who testifies that a class of persons to which the victim belongs is truthful is essentially telling the jury that they can believe the victim in the instant case as well.”  
Id
. at 711.  It then concluded that “[t]his is not ‘expert’ testimony of the kind which will assist the jury under Rule 702.”  
Id
.  The expert’s testimony in 
Yount
 and that in this case is markedly similar.  Thus, we must conclude that the trial court here erred in receiving Dr. Kirby’s belief as to the truthfulness of the victim.

Having made that determination, we must next consider whether the error requires reversal.  This is true because Texas Rule of Appellate Procedure 44.2(b) provides that an error that does not affect a defendant’s “substantial rights” does not mandate reversal.  A substantial right is affected “when the error had a substantial and injurious effect or influence in determining the jury’s verdict.”  
King v. State
, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L. Ed. 1557 (1946)).

Our review of the record convinces us that the error does not rise to the level requiring reversal.  Notwithstanding Kirby’s testimony, the jury heard the victim’s testimony first hand.  They thus had the opportunity to view her demeanor and maturity for themselves.  Moreover, the trial judge correctly charged them that they were “the exclusive judges of the credibility of the witnesses, of the weight to be given the evidence and of the facts proved.”  Under this record, we cannot say that the trial court’s ruling affected appellant’s substantial rights.  Accordingly, appellant’s issues 23 through 25 are overruled.

In issues 26 and 27, appellant contends that the evidence is both legally and factually insufficient to sustain his conviction.  The standards by which we measure these challenges are by now axiomatic.  In considering a legal sufficiency question, we are required to view the evidence in a light most favorable to the prosecution and then determine if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  
 Jackson v. Virginia
, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  In considering a factual sufficiency challenge, we must view all the evidence without the prism of “in the light most favorable to the prosecution,” and we may only set the verdict aside if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  
Clewis v. State
, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996).  In performing our review, we must remember that the trier of fact is the sole judge of the weight and credibility of the testimony, and that we may not substitute our judgment for that of the jury.  
See Santellan v. State
, 939 S.W.2d 155, 164 (Tex.Crim.App. 1997).  We must also remember that a decision is not manifestly unjust because a factfinder has resolved conflicting views of the evidence in favor of the State.  
 Cain v. State
, 958 S.W.2d 404, 410 (Tex.Crim.App. 1997).

In challenging the sufficiency of the evidence, appellant advances the theory that the outcry witness received the outcry in an unusual manner.  In doing so, he argues that Box and Dalton suspected T.C. was being abused  and, based upon this supposition, carried out a “plan” to validate their suspicions.  That “plan” included interrogations by Dalton (a minor) and Box (the outcry witness) and then notification of the proper authorities.  Additionally, appellant contends, T.C.’s alleged “admission that she had been abused at the hands of appellant, is not corroborated by any other evidence.”

We have previously detailed the evidence and will not do so again.  Suffice it to say, the jury heard each of the witnesses testify at trial.  Not only did T.C. testify, but O’Neal, the sexual assault nurse, testified that her examination of T.C. revealed physical signs of sexual abuse.  It was the trial jury’s peculiar province to believe or disbelieve any, none, or all of the witness testimony.  We have carefully reviewed the evidence and find it both legally and factually sufficient to sustain the jury’s verdict.  Appellant’s issues 26 and 27 are overruled.

In issues 28 through 30, appellant questions whether he was afforded effective assistance of counsel.  In order to prevail on an ineffective assistance of counsel claim, appellant must satisfy the two-prong test explicated in 
Strickland v. Washington
, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Initially, appellant has the burden to establish that his trial counsel’s representation was deficient because it did not constitute “reasonably effective” assistance when the totality of that representation is considered in the light of all the surrounding circumstances.  Then, if appellant establishes the first prong, he must affirmatively show prejudice, that is, if counsel’s errors and deficient performance were so serious that they effectively deprived him of a fair trial.  Stated another way, appellant must prove that there is a reasonable probability that but for counsel’s unprofessional errors, the result of the trial would have been different.

Specifically, appellant contends that “one may infer” that appellant did not know that Terry would be assisting in his defense, and Terry “did not seem to know or realize that failure to object to consolidation or failure to sever resulted in waiver of severance and made the provisions of Article 3.03 available to the state and the court.”  He additionally complains that his attorney did not give him time to properly prepare his case and that because of his incarceration, he was only able to visit with his attorney for somewhere between 15 minutes and an hour and five minutes.  Moreover, he never spoke with Terry before the commencement of the trial.

Although he has concluded that these “errors” would have changed the outcome of the trial, he has failed to make the requisite showing.  First of all, as the State has pointed out, whether these cases were tried separately or together, the judge would have the right to require that appellant serve the sentences consecutively.  Furthermore, the trial judge conducted a hearing into appellant’s dissatisfaction with Clark’s services, and as a result of the hearing, concluded those services were satisfactory.  Appellant never made a trial objection to Terry’s services and our review of the record reveals that Terry asked appropriate questions and conducted appropriate cross-examinations of the State’s witnesses.  The record shows that both Terry and Clark strongly advocated their client’s interest throughout the trial.  In sum, appellant has failed to meet the 
Strickland
 standard to show ineffective assistance.  Appellant’s issues 28 through 33 are overruled. 

In final summary, all of appellant’s issues are overruled and the judgments of the trial court are affirmed.

John T. Boyd

 Chief Justice

Do not publish.